**CORKLE v. UNITED STATES.**

**Civ. A. No. 2553.**

United States District Court
E. D. South Carolina.
Charleston Division.
Jan. 17, 1951.

Edward K. Pritchard, Charleston, S. C., for plaintiff.

Ben Scott Whaley, U. S. Atty., Russell D. Miller, Asst. U. S. Atty., Charleston, S. C., for defendant.

WARING, Chief Judge.

Suit brought under the Tort Claims Act, Title 28, U.S.C.A. Section 1346(b), 2671 et seq., for damages to an automobile owned by the Plaintiff. This Court has jurisdiction of the persons and subject matter.

The Plaintiff was the owner of a 1942 DeSoto Convertible automobile. The car had been parked close alongside the curb of the sidewalk and headed north at a place on the east side of Meeting Street in the City of Charleston, on the early morning of February 28, 1949. A mail truck, owned by the United States and used by the Post Office Department at Charleston, South Carolina, collided with the rear of the automobile. The truck was then and there being operated by a driver in the employ of the United States who was acting within the scope of his office or employment. The truck was proceeding northwardly on Meeting Street carrying mail destined for the railroad station. The Post Office truck ran into the rear of the parked automobile driving it violently forward until the automobile came into contact with a pole situate on the sidewalk about 70 feet northward of the point of collision. The Automobile was badly damaged. There is no doubt as to the liability of the United States under the Tort Claims Act, and the only question at issue is the measure of damages.

The testimony showed that the DeSoto automobile had been sold to the Plaintiff, Corkle, for $350.00. Thereafter, Corkle entered into an arrangement with a friend of his named Holliday for repairing or rather rebuilding of the automobile. Holliday did the actual work of rebuilding, and according to the testimony, Corkle's total cash expenditures (including the purchase price) amounted to $711.00. Holliday spent a considerable time in putting in the new parts, adjusting, and doing all the necessary repair work and, as a result of this joint enterprise, consisting of respective contributions of capital and labor, they had an automobile that, according to the testimony, was useable and would be considered as a used car above the average in condition. The car was used jointly by Holliday and Corkle, and they had an understanding that if it should ever be sold, there would be a division between them of the amount that the car brought over and above Corkle's cash expenditures. There

was testimony that a car of this make, model and type, if in good condition, would be valued at something over $1,300.00. This was the testimony adduced by the Plaintiff and also by one witness for the Defendant. This valuation was based upon the tables set forth in the well known national publication in use by used car dealers and commonly referred to as the "Blue Book". Considering all the evidence, it would seem that the Plaintiff had sustained the burden of showing that the above valuation was a fair one.

After the collision, the wrecked automobile was sold and after deduction of expenses of sale, the Plaintiff received $134.00. This amount must, therefore, be deducted from the value of the car at the time of the collision. In addition to the loss of the car, itself, Plaintiff claims that he should be reimbursed for loss of service and he bases this claim upon the fact that both he and Holliday had need for the use of a car in their respective businesses and that he has not been able to replace the wrecked car and that he has to use taxi service. Apparently, he has an idea that because he was not financially able to buy another car, this taxi service can be charged against the government without limit. It was stated in the trial of the cause that eight weeks would be considered a reasonable time in which to adjust the loss. Fixing taxi service at $2.00 a day (which was the amount estimated by the Plaintiff) and allowing 48 days (eight six-day weeks) gives us a total of $96.00 for loss of use.

Plaintiff filed a claim with the Post Office Department in which he set forth that the car was worth $1,300.00 and he added to this $288.00 as a claim for estimated hire of another car. The Government now maintains that this claim was false and fraudulent and the United States Attorney has appeared and, under instructions from the Attorney General, has made a motion both before and during the trial asking that he be allowed to amend the Answer by setting up a further defense by alleging that the Complaint was false and that Plaintiff is debarred from recovering anything whatsoever from the Government. This late attempt at introducing another defense is based upon Section 2514 of Title 28, U.S.C.A.

■ The Court refused to dismiss the claim on this ground and held that the section above referred to does not apply to claims brought under the Tort Claims Act. Section 2514 is a portion of the Judicial Code which relates exclusively to Court of Claims procedure and the Section provides that a claim against the United States shall be forfeited if found to be fraudulent and states, "In such cases the Court of Claims shall specifically find such fraud or attempt and render judgment of forfeiture." This shows that the Section applies to cases in the Court of Claims only.

■ But there is another reason why the defense of alleged fraudulent claims is not available. I do not think that the Government has, in any way, sustained its contention that the claim was tainted with fraud. The testimony before me, including the testimony of one government witness, was to the effect that the valuation of the car was approximately $1,300.00. That is the amount stated in the claim filed by the Plaintiff and accounts for most of it. It is true that his claim for automobile hire was placed at a larger figure than I thought the facts showed. In his claim, he stated, "will also have to pay $35.00 per week, plus 7¢ per mile to hire replacement". To sustain such a claim, the Plaintiff produced testimony as to what it would cost to hire a car. I think that this part of the claim was exaggerated and was based on a mistaken theory but I do not think that a Court could find that it was a fraudulent claim. Plaintiffs frequently exaggerate or puff their claims. This was not a misstatement of a fact that would constitute a fraud. While I would not consider allowing the Plaintiff an amount for hiring another car when he, himself, showed that he used a taxi at much less cost and while I would have to limit the time over which loss of use would apply; yet it would be a gross misuse of the power of the Court to find that a claim that is merely exaggerated or based on a wrong theory constitutes a fraud. In my opinion, the position of the Government in this case is unfair. A claim was filed. There is no question but what there was

liability. The claim for the value of the car was substantially correct, and while the claim for the loss of use was filed upon a mistaken theory, it was easily distinguishable and the Government investigators could, without any difficulty, have adjusted and settled this claim. As a matter of fact, they seem to have made no honest effort to do anything about an adjustment. Here is a case of a man who loses his property through no fault whatsoever of his own, and the United States Government is liable to him without a shadow of a doubt and should pay him a fair equivalent of his loss, but instead of that, different Government officials write letters and bandy the claim back and forth and now come up with this absurd plea that the man should get nothing and should be chargeable with fraud and found to have tried to cheat his government. And I shall not sustain or tolerate an attempt to deprive a citizen of his rights on the unproven and baseless claim that he has tried to defraud the Government. Under all the circumstances, I think that the valuation ($1,300.00) placed by the Plaintiff on his car is substantially correct, and I would find for him that amount after deducting the amount realized on salvage of the wreck ($134.00) and adding a reasonable amount for loss of use ($96.00) which would bring about a figure of approximately $1,262.00.

But I regret to say that there is one other matter that must be considered, and I do not find that I can make the award which I think is due. The Plaintiff filed his claim for $1,588.00 which included the claimed value and loss of use. He filed his claim with the Post Office Department and under date of June 22, 1949, received a letter from the Postmaster at Charleston (see Exhibit F). In this letter, the Postmaster pointed out to the Plaintiff that the Post Office Department is not authorized to consider a claim in excess of $1,000.00 but that if the claimant is willing to reduce the claim, consideration would be given to it. Under date of July 14, 1949 (Exhibit G) Plaintiff wrote to the Solicitor for the Post Office Department at Washington, D. C. referring to the letter which he had received from the Postmaster in which he said, "I hereby reduce my claim to one thousand ($1,000.00) Dollars". Now this raises a very serious point. Under Chapter 171 of the Judicial Code, "Tort Claims Procedure", are various provisions in regard to the filing of claims, adjustments thereof, and bringing suits. One of these provisions, Title 28 U.S.C.A. § 2675, is that an action shall not be instituted upon a claim which has been presented to a Federal Agency unless such agency has made final disposition of the claim. It is further provided that a claimant may withdraw his claim from the Agency and commence action. But if an action is brought, it shall not be for any sum in excess of the amount of the claim presented to the Agency. (With exceptions not applicable here). In the instant case, claim was presented to an agency and specifically reduced and consideration asked for a claim of $1,000.00. That reduced claim was presented to, and pending with, the Post Office Department. It was eventually refused and then this action was commenced. And so it appears quite clear to me that this Court is unable to make an award in excess of $1,000.00 in the face of this distinct limitation and provision in Section 2675. Plaintiff calls attention to the fact that the Government has not set up this statute in its pleadings or made an effort to invoke its provisions. It does seem rather remarkable that Government officials are fighting this claim upon the ground of its being fraudulent and yet do not take the trouble to invoke the clear provisions of the section above referred to. In other words, the Department of Justice is basing its defense upon a statute applicable only in the Court of Claims and shuts its eyes completely to a section directly governing a case in a District Court under the Tort Claims Act. If this were a case of an individual or private corporation, the suggestion of waiver because of failure to plead the statute might receive serious consideration. But generally speaking, the United States Government, under the doctrine of sovereignty cannot be bound by the negligence of its officials in calling to the attention of the Court the provisions of the law. Because the Department of Justice does not plead the law,

does not excuse a judge from following the law. I am of the opinion that Section 2675 is binding upon the Court and that I cannot allow a claim in excess of an amount for which the claim was filed with the Post Office Department. Accordingly, although I believe that the Plaintiff would ordinarily be entitled to an award in excess of $1,000.-00, I shall limit the award to such sum.

All pertinent facts are sufficiently found and set forth and my Conclusions thereon in the foregoing Opinion. Accordingly it is

Ordered, that the Plaintiff, Edward C. Corkle, have judgment against the United States of America for the sum of $1,000.00 together with the taxable costs of this action.