**MORGAN v. UNITED STATES.**

United States District Court
S. D. New York.
April 19, 1954.

Ramey & McKelvey, New York City, for plaintiff, William McKelvey, New York City, of counsel.

J. Edward Lumbard, U. S. Atty., New York City, for defendant, Philip M. Drake, Asst. U. S. Atty., New Rochelle, N. Y., of counsel.

CONGER, District Judge.

Plaintiff sues for personal injuries claimed by him to have been received when he was struck by an army truck.

Date of accident was in the early afternoon of December 2, 1949. Place of

accident: At the entrance of the Pennsylvania Railroad Station, Seventh Avenue, New York City.

Claimed cause of injuries: Struck by an army automobile operated by Anthony R. Vuolo, a corporal in the United States Army.

Plaintiff, aged 45 at the time of the accident, usually worked around the Pennsylvania Station carrying baggage and parcels for persons either entering or leaving the Pennsylvania Station. He claims that at the time and place mentioned above he was carrying a bag for a woman who was going to the Long Island Railroad Station, which is part of the Pennsylvania Station; that he was walking with the woman north on Seventh Avenue; that the place where he claims he was struck is at the vehicular entrance to the station. At the place where these entrances start there are large stone or concrete pillars. In order for an automobile to get into the station it has to pass over the sidewalk and enter the driveway between two of these large pillars. The entrance is not wide. At the trial it was agreed that the one which defendant's car entered was 9′ 11″ wide. There are three such entrances (each guarded by a pillar) which may be designated as the south entrance, the middle entrance and the north entrance. Plaintiff claims he and the woman had passed the south entrance and the central entrance and were standing on the sidewalk in front of the northern column of the central entrance and that as they stood there an army carryall automobile coming south on Seventh Avenue at too great a rate of speed under the circumstances turned to go into the central entrance and made too sharp a turn so that the right rear of the automobile struck plaintiff and pushed him against the pillar; that he was not knocked down nor dragged.

The driver of the army truck, while admitting that about this time he did drive into this entrance, claims that he stopped just before he entered and before he reached the pillars; that he started up again; that he felt no bump and heard no outcry; that in substance he struck no one.

The story of plaintiff and that of the driver of the army automobile differs in many respects. They may not be reconciled.

Plaintiff, himself, was not consistent in his story in several respects. For example, in the first claim he made he stated he and the woman were walking south on Seventh Avenue. At the trial he testified they were walking north. Why the change I do not know. It was not important which way they were walking. He also claims that the driver of the car did not stop before reaching the pillar and then start up.

Nevertheless, I am satisfied that the accident took place and that plaintiff was struck by the rear end of the army car. Plaintiff's actions after he claimed he was struck confirm this. He followed the army automobile down the ramp and caught up with it at the Military Police booth at the end of the ramp, where he spoke to the driver (Vuolo), who was still in the car and said to him in words or substance, "Do you know you hit me back there?"

Vuolo then directed the plaintiff to the Military Police booth. Plaintiff again repeated to the officer in charge of being hit by the army car and was thereupon sent to the first aid station in the railroad station and from there he was sent by ambulance to St. Vincent Hospital where he remained until some time in the evening and was later sent home. The hospital records show that plaintiff was treated at the hospital at 3:19 P. M. The hospital records also contain this entry: "pt. says he was hit by an army truck."

The hospital records also confirm the fact that plaintiff was injured. They indicate that the diagnosis was, "Contussions of Rt. thigh."

Plaintiff testified that later in the evening at the hospital he identified Vuolo as the driver of the truck which hit him. Vuolo, however, testified that the same evening, with the soldier who

had been his companion in the car, he was taken to the hospital by Captain Jackson, his commanding officer, and that plaintiff there failed to identify him.

Vuolo testified that what actually happened was that Vuolo and his companion walked up to plaintiff, who was lying down on the emergency table and that plaintiff then said (and that was all that was said), "A couple of soldiers hit me back there at the Penn Station."

From the above I have come to the conclusion that plaintiff was standing in the vicinity of the pillar, as he stated, and that he was struck by the army car driven by Corporal Vuolo.

Having come to this conclusion, I think that a fair inference is that the striking of plaintiff was caused and brought about by the negligence and want of care of the driver of the truck. This was a very busy spot. The vehicular traffic in order to get to the station had to cross this sidewalk. Also, the driveway was narrow—9' 11" wide and the car was 7' wide. There was not a great deal of clearance. The driver of the car said he went in on a slant. My inference, and I think it is a justifiable one, is that the right rear of the car was too close to the pillar to allow it to clear a pedestrian who might be standing on the walk near the pillar, where plaintiff says he was. I do not hold that the car was being driven too fast but I do hold that the driver of this car going into this narrow driveway on a slant failed to observe plaintiff and failed to so operate his car at this time and place so as to avoid striking plaintiff. To be more explicit I think the driver of the army automobile went too close to the pillar with the right rear of the car. Vuolo testified that as he entered the driveway there were a number of people near the column; that there was not much room to swing; that he had to stop; that he did stop just before he got to the pillar; that he saw people on the sidewalk and quite a lot of traffic and it was a busy place. I believe that after Vuolo started up due to the slant the rear end of the car struck plaintiff. Under the circumstances, Vuolo would not be likely to see the contact and he might very well not have felt it, the blow being more or less a glancing blow.

I cannot find from the evidence that the plaintiff was guilty of contributory negligence. Therefore, I hold that plaintiff has met the burden of proving himself free from contributory negligence.

Plaintiff is entitled to a verdict but the question now remains as to the amount of recovery. This question depends on several United States statutes, and plaintiff's use of them after his accident.

Plaintiff could have sued the defendant here for money damages for the personal injuries which he received without resort to any administrative agency and without filing a claim with any such agency. Title 28 U.S.C. § 1346(b).

Plaintiff, however, instead of suing, filed a claim with the Army for damages for his injuries in the sum of $3,000. This claim was filed on or about January 17, 1950 and was filed apparently in accord with 28 U.S.C. § 2672. This section of the law permits Federal agencies of the United States to entertain and adjust claims against the United States for money damages for personal injuries caused by negligence of an employee of the Government, while acting within the scope of his employment. Subsequently, and on January 20, 1950 a representative of the Army wrote plaintiff's attorney that since the claim was in excess of $1,000 the Army had no authority to consider the claim; that since the claim was asserted in excess of $1,000 it must be presented by way of suit in the United States District Court pursuant to the Federal Torts Claims Act; that the notice of claim was being returned and the filing thereof was considered a nullity; that claimant could file a claim of $1,000 or less but that any claim of more than $1,000 would have to be prosecuted in the Courts.

Still, plaintiff did not sue but did file a claim on or about January 27, 1950 in the sum of $1,000. The Army acknowledged receipt of the claim and asked

claimant to furnish it evidence in support of his claim and a detailed statement by claimant of the circumstances of the accident.

This, claimant did and submitted his affidavit in support of the claim under date of February 16, 1950. Subsequently, the claim was rejected by the Army. The date of such rejection is not in the record.

Subsequently, and on or about May 23, 1951 suit was started in this Court. In that suit plaintiff sued for $3,500 damages.

At the trial plaintiff's attorney moved to amend the complaint to demand damages in the sum of $3,000. This amendment I allowed without considering or passing on the question now raised here.

The defendant contends that plaintiff if entitled to recover at all is not entitled to more than $1,000, the amount of the last claim. Section 2675(b) (which the defendant relies upon) provides that no action shall be instituted in excess of the amount claimed except when the claim is based on newly discovered evidence not reasonably discernible at the time of presenting the claim to the Federal agency or upon allegation and proof of intervening facts relating to the amount of the claim.

Defendant claims that there are no such intervening facts and newly discovered evidence which give the plaintiff the benefit of the above exceptions and entitle him to a verdict of more than $1,000.

Plaintiff bases his claim for recovery of more than $1,000 on the fact that he did not know the serious nature of his injuries and did not know that he would be permanently disabled.

There are two cases cited to me on the subject. Plaintiff cites the case of Phillips v. United States, D.C.Tenn., 1952, 102 F.Supp. 943, 949. There plaintiff had filed a claim for $1,000 but was allowed to recover more because her condition had become so progressively worse that it could not have been foreseen at the time she filed her claim. At the time said plaintiff had filed her claim, it appeared by the testimony of her doctor that the infection in her hand had cleared up. Subsequently, however, complications set in and the infection spread so that her right hand and the whole of her right arm were in a serious condition. The Court stated that the proof indicated strongly that the infection was spreading to her breast, right shoulder and possibly her neck. As the Court remarked, "As to where it will end, the Court is unable to say."

Certainly, here was a case where plaintiff's condition could not reasonably have been discovered at the time of the filing of the claim.

In this case, plaintiff had no attorney at the time she filed the claim. It further appeared an attorney for the Atomic Energy Commission (the administrative body concerned) told the claimant that if her damages exceeded $1,000 her claim could be withdrawn and never be shown.

The defendant calls my attention to Carlson v. United States, D.C., 88 F.Supp. 337. There we had a situation similar to the one at bar. A claim asserted at first for $2,500—later withdrawn because of lack of jurisdiction as here, and subsequently a claim filed for $1,000. The Court held that this section constituting a limited waiver of sovereign immunity should be construed strictly and that no power was given claimants to alter their substantial or procedural rights thereunder. The Court held plaintiff's recovery to not more than $1,000, stating that the increased amount was not based upon newly discovered evidence not reasonably discernible at the time of presenting the claim to the Federal agency.

The rule, as I gather it from the statute and from the two cases above cited as applied to this case is as follows: That plaintiff here may not recover more than $1,000 unless and if the increased amount sought here is based on newly discovered evidence which this plaintiff could not reasonably have discovered at the time he presented his

claim. This, of course, has to ·do· with plaintiff's physical condition and his injuries and extent thereof caused by the accident.

█ I have come to this conclusion that plaintiff's condition or the seriousness of it could have been discovered with reasonable diligence on plaintiff's part. At least he should have made an attempt to discover what his condition was before he filed the claim for $1,000. He did nothing. As a matter of fact from the time he left St. Vincent's Hospital he has never received any medical treatment or been examined by a doctor except one who examined him for the defendant and this was not until October 20, 1953.

In the affidavit of February 16, 1950 which plaintiff submitted to the Army in connection with his claim, he stated in one place that he was severely injured and again "that deponent's right hip and pelvis were injured in the accident and ever since and up to the present time deponent has had severe pain in his hip and pelvis area * * * That ever since the accident deponent has been unable to perform his work by reason of the pain which continued in deponent's right hip and pelvis area."

Actually, there has been no change in plaintiff's condition—no aggravation or setting up of a new condition. Plaintiff testified, when he filed his claim, he "did not know that his condition would last so long" but he made no effort to find out before he filed the claim. I have not been furnished with the minutes of the trial. My own notes taken at the trial show that the plaintiff testified that he decided to reduce the claim to $1,000 because he had a poor time; that he thought he had a permanent injury back there; that he heard the doctor at the hospital tell that he had; that he did not tell his attorney that he had a permanent injury.

It should be noted here that from the very beginning plaintiff had an attorney.

Under all the circumstances I feel that plaintiff, having filed his claim for $1,000,· is restricted, therefore, and for that reason to a recovery for that amount.

Award to plaintiff against defendant $1,000.

Settle judgment.