**Henry A. NICHOLS, Sr., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 2140.**

United States District Court
E. D. Virginia, Norfolk Division.
Jan. 4, 1957.

Jett, Sykes & Howell, Henry E. Howell, Jr., Norfolk, Va., for plaintiff.

L. S. Parsons, Jr., U. S. Atty., John M. Hollis, Asst. U. S. Atty., Norfolk, Va., for defendant.

HOFFMAN, District Judge.

In this action under the Federal Tort Claims Act, 28 U.S.C. § 2671–2680, plaintiff was injured on May 27, 1955, while on duty as an engineer operating an engine of the Virginian Railway at the Sewells Point Yard which is located in the immediate vicinity of the Naval Air Station, Norfolk, Virginia. A radio aerial antenna weight, with approximately five feet of copper wire attached, became detached from a low flying naval aircraft and struck the cab door of the engine operated by plaintiff in such a manner that the same was caused to enter the cab stricking plaintiff on his left thigh, knee and leg. Liability on the part of the United States is admitted.

Plaintiff was immediately seen by a physician employed by the Railway. There were brush burns around the left leg above the knee curling around the leg about one and one-half times to a point below the knee. Additionally, there was an abrasion approximately four inches in length above the knee, and other minor abrasions and extreme contusions over the calf of the leg. Plaintiff's leg was strapped with elastic adhesive, and, because of the danger of a blood clot, he was ordered to walk as much as possible and to continue work. The patient saw a physician thereafter on May 31, June 3, June 14 and June 27, which were the only days he lost time from work, his total loss of wages aggregating $77.96. On June 14 plaintiff was discharged as a patient and returned to full duties with a statement to the effect that the bruises had cleared, the abrasions had healed, but with a residual marked edema of the lower leg, ankle and foot with induration and swelling of the calf and thigh at the site of injury. The physician, Dr. Floyd, suggested to plaintiff that this condition should clear up satisfactorily in from four to six weeks, but indicated that there might be some permanent scarring of the internal muscles of the leg.

Subsequent to the injury an investigator for the Security Department of the Naval Air Station called upon plaintiff and advised him that if he desired to file

a claim, it could not exceed $1,000 as this was the maximum amount which could be considered from an administrative standpoint. The investigator further said that if the claim exceeded $1,000 it would require Congressional action to approve same. At first plaintiff indicated that he was of the opinion he was entitled to $5,000 and stated that he would prefer awaiting developments. While nothing specific was said by the investigator as to plaintiff's rights under the Federal Tort Claims Act, is is apparent that plaintiff was fully cognizant of same as he testified that one of the reasons why he finally executed the claim in the sum of $1,000 was due to the fact that he wished to avoid going to court.

Plaintiff went on vacation during July and was still troubled by the condition of his leg. He knew that he had sustained some permanent scar tissue injury. Shortly after his return from his vacation, he again conferred with the investigator and, on August 5, 1955, executed the claim for $1,000. At that time the leg had not cleared up and the swelling had not wholly subsided, although, having been advised that it would take from four to six weeks to clear subsequent to June 14, plaintiff was no longer concerned with the danger of a blood clot. Several weeks after filing the claim plaintiff noted an improved condition.

There is no suggestion that plaintiff was unduly urged or forced to sign the claim. The fact that he had not then sought the advice of an attorney is of no consequence. He apparently was, at the time stated, in possession of full knowledge as to his condition. He executed the claim for damage or injury on the standard form 95 and, immediately above his signature appear the words, "I agree to accept said amount in full satisfaction and final settlement of this claim".

In due time the Navy Department rejected the claim as to amount and suggested settlement in a lesser sum. Counsel for plaintiff contend that the form does not reveal on its face the name of the agency of the United States to whom the claim was submitted, and that the statute, 28 U.S.C. § 2675(b), limiting the amount recoverable under the Tort Claims Act to the maximum amount of said claim, is not applicable. There is no merit to this contention as the claim was recognized by the Navy Department and plaintiff's replication to the affirmative defense asserted by the Government concedes that the claim was filed with the United States Navy. Furthermore, the purpose of this statute is for the benefit of the Government in order that the claim may be properly identified and investigated through the appropriate agency.

Plaintiff then employed counsel and was sent to Dr. George A. Duncan, an outstanding orthopaedic surgeon, for examination. On November 10, 1955, Dr. Duncan reported that plaintiff complained of a feeling of numbness and pressure in the injured leg; that these symptoms were legitimate and related to the accident; and that the condition would improve but that it might require from four to six months. During all of this time and, in fact, from the date of the accident to the date hereinafter mentioned, plaintiff continued to work.

On March 7, 1956, plaintiff, while on duty, was stricken with a coronary occlusion. He did no work thereafter until July 19, 1956. Plaintiff urges that there is a causal connection between the injury of May 27, 1955, and the heart attack sustained on March 7, 1956. As to this point the burden of proof rests upon the plaintiff. While Dr. Floyd, the general practitioner, does not attribute the heart attack to any blood clot resulting from the accident, he does state that the mental stress, strain and anxiety of plaintiff's condition resulting from the accident probably contributed to bringing about the coronary occlusion. The testimony of Dr. John Franklin, an outstanding specialist in the field of internal and diagnostic medicine, is to the contrary. Dr. Franklin concedes that fear will aggravate a diseased heart, but that it is highly debatable as to whether or not

strain and anxiety may be causally connected with a heart attack. There is insufficient evidence to justify a finding that plaintiff was under any unusual stress and strain, and the fact that he continued his daily duties as a locomotive engineer until he suffered his heart attack is an important factor suggesting that there is no causal relation between the injury and the heart condition. The testimony on the causal relation between the injury and heart attack is too conjectural and speculative. Elgin v. United States, D.C., 89 F.Supp. 195.

█ It is undoubtedly true that Dr. Floyd did not foresee the slight numbness and pressure, all of which was non-disabling, at the time of his final examination, but this fact, as ultimately determined by Dr. Duncan, does not constitute newly discovered evidence not reasonably discoverable on August 5, 1955, when the claim was filed, nor is it the equivalent of "intervening facts", and hence is not within the exception as provided in 28 U.S.C. § 2675(b). The heart attack, if causally connected with the accident, would have been evidence not reasonably discoverable on the date stated or would have been tantamount to an intervening fact but, as previously noted, the plaintiff has failed to sustain his burden on this point.

When Congress enacted the Federal Tort Claims Act, it saw fit to provide for a limited waiver of sovereign immunity on certain terms and conditions. One of these conditions was that anyone filing an administrative claim would be limited to a maximum of $1,000 and that, if the claim was not settled by the administrative authorities, the amount thereafter recoverable under the Tort Claims Act would be limited to the maximum amount of said claim *unless*, subsequent to the time of the filing of said claim, new evidence developed which was not reasonably discoverable at the time of filing, or there be allegation and proof of intervening facts. As Dr. Floyd had warned plaintiff as to the possibility of a blood clot, the anxiety of the situation undoubtedly existed for a period of from six to eight weeks after the accident but, as time went on, it is only reasonable to assume that this anxiety lessened even though the numbness and pressure may have continued to exist for many months thereafter.

Plaintiff relies upon Craun v. United States, D.C., 78 F.Supp. 840, to support his contention that the claim was never filed with a Federal agency for the reason that the name of the agency was not revealed on the face of the claim. The reasoning in the Craun case is not disclosed by the findings of facts and conclusions of law, but it is apparent that the claim was not properly presented to the Letterkenny Ordinance Depot at Chambersburg, Pennsylvania, when it involved the negligent act of an employee of the Government driving a tractor-truck from Indiantown Gap Military Reservation, Pennsylvania, to Fort George Meade, Maryland. It is not possible to ascertain from the facts whether the employee was stationed within the jurisdiction of Letterkenny Ordinance Depot. Thus Craun affords no relief to plaintiff.

Limiting the right to sue to the amount of the claim filed presents a more difficult question. Apparently considerable discretion is vested in the District Courts to determine what constitutes "newly discovered evidence not reasonably discoverable" at the time the claim was presented, or what is tantamount to "intervening facts, relating to the amount of the claim". In United States v. Alexander, 5 Cir., 238 F.2d 314, decided November 2, 1956, plaintiff filed an administrative claim six weeks following his injury. During the ensuing five months plaintiff, on several occasions, advised the agency that his injury was more serious than originally contemplated and that it might be necessary to withdraw the claim. While the claim was never actually withdrawn, the appellate court affirmed the judgment of the lower court in an amount in excess of the claim filed. The instant case is distinguished by reason of the fact that claimant (plaintiff herein) never notified the agency that

his injury was more serious than originally thought and, in fact, it apparently was not more serious. According to the report of Dr. Duncan there was no major impairment of function and the symptoms of numbness and pressure were a natural result of the injury. These same symptoms could have been foretold at the time of filing the claim on August 5, 1955, and, in any event, were non-disabling.

Plaintiff's reliance upon Barroll v. United States, D.C., 135 F.Supp. 441, is misplaced. In that case the claimant apparently executed a settlement agreement (Form 96) and not an administrative claim (Form 95). Judge Thomsen properly construed this to be an offer of compromise as distinguished from a claim filed within the meaning of the statute. In fact, the Barroll case is distinguished from Morgan v. United States, D.C., 123 F.Supp. 794, Corkle v. United States, D.C., 94 F.Supp. 908, and Carlson v. United States, D.C., 88 F. Supp. 337, in the court's opinion. A proper case for the application of the rule of "newly discovered evidence" is pointed out in Phillips v. United States, D.C., 102 F.Supp. 943. The instant case is more in line with the Morgan case, supra.

The statute, 28 U.S.C. § 2675(b), would be meaningless if claimants, after rejection of their claim, could institute actions for amounts in excess of the claim filed merely because they, or their attorneys, are of the opinion that the claim has a greater value. The evidence presented in this case does not fall within the exceptions as stated in the statute.

Holding as I do that plaintiff's claim in this action is limited to a maximum recovery of $1,000, a judgment order will be entered in favor of the plaintiff against the defendant in this amount. But for the filing of the administrative claim, the Court is of the opinion that plaintiff would be entitled to $2,000 for his pain, suffering, mental anguish, loss of wages and minimum expense incurred, which sum does not contemplate any causal connection between the injury and the heart attack.

Counsel will prepare a judgment order in accordance with this opinion, which is adopted as the Court's findings of fact and conclusions of law.