**UNITED STATES of America,**
**Appellant,**

v.

**The BARGE SHAMROCK, her tackle appurtenances, etc., and Harbor Towing Corporation, Shell Oil Company and Water Quality Insurance Syndicate, Appellees.**

**No. 79–1603.**

United States Court of Appeals,
Fourth Circuit.

Argued May 6, 1980.
Decided Dec. 10, 1980.

---

Alfred Mollin, Washington, D. C. (Alice Daniel, Asst. Atty. Gen., Washington, D. C., Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., Leonard Schaitman, Dept. of Justice, Civ. Div., Appellate Section, Washington, D. C., on brief), for appellant.

John Henry Lewin, Jr., Baltimore, Md. (James K. Archibald, Venable, Baetjer & Howard, John T. Ward, M. Hamilton Whitman, Jr., Ober, Grimes & Shriver, Baltimore, Md., on brief), for appellees.

Before WINTER, WIDENER and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

On September 6, 1978, the United States filed this action to recover $462,098.00 in costs expended by the Government in removing an oil spill. The district court, holding the action barred by a statute of limitations, granted summary judgment for the defendants and the Government appeals.

*The Barge Shamrock* discharged the oil while being loaded at Wagners Point, Baltimore Harbor, Maryland, on August 10, 1975. The defendants are Shell Oil Company (which was loading the barge) and Harbor Towing Corporation (which owned the barge) (collectively, Companies). Three years elapsed between the spill of August 10, 1975, and filing of the action on September 6, 1978. We hold that the computation of time for filing the action commenced on September 12, 1975, when the government completed the oil removal. Since less than three years elapsed from that event until the action was filed, the case must be reversed and remanded for trial.

The *Shamrock* lay moored at Shell's Wagners Point petroleum terminal at about 1:00 a. m. on August 10, 1975, and began loading from Shell's shoreline at that time. Approximately 135,000 gallons of oil soon overflowed from the *Shamrock's* tanks into the Patapsco River. Neither Harbor Towing nor Shell attempted to remove the oil. The complaint alleged that the *Shamrock* was unseaworthy and undermanned, that her crew was careless, incompetent, overworked, fatigued, and asleep on watch during loading, that Shell Oil's dockman was careless, incompetent, overworked, fatigued, and asleep on duty during the loading, and that both companies were willfully negligent in that they knew of these conditions concerning their respective personnel yet did nothing to remedy the conditions.

The Government, in answering interrogatories, furnished the Coast Guard report covering the entire incident. Among the details disclosed was the oil removal completion date–September 12, 1975.

The action was brought under the Federal Water Pollution Control Act (the Act) Subsection, 33 U.S.C. 1321(b)(3), which prohibits discharges of oil or hazardous substances into certain navigable waters of the United States.

The Act contains a variety of penalty and cleanup cost–recovery provisions for oil spills. Administrative penalties up to $5,000 may be imposed, without a showing of fault. The administrator of the Act may also seek judicially–imposed penalties. The Government may recover the actual cost of cleanup operations for spills from vessels up to a maximum of $250,000, even without fault. It may recover all actual removal costs without maximum limitation on the showing of willful negligence or willful misconduct. 33 U.S.C. §§ 1321(b)(6)(A), 1321(b)(6)(B), 1321(f)(1).

There is no specific statute of limitations contained in the Act. The Companies contend that 28 U.S.C. § 2415 controls this action. Section 2415 expresses generally the time limitations barring actions against the Government. The Companies argue that the oil spill was a tort, and is thus governed by the three–year time bar specified for torts in section 2145. The district court agreed and held that since the oil spill occurred on August 10, 1975, more than three years prior to filing of suit on September 6, 1978, the action was time–barred.[1]

■ The Government contends that Congress did not intend the Federal Water Pollution Control Act to be subject to the provisions of section 2145. It argues, alternatively, that even if the three–year time bar for torts is applicable, the complaint was timely filed on September 6, 1978. Although the spill occurred on August 10, 1975, the Government argues that the cause of action did not accrue until September 12, 1975–when the oil removal was completed. We agree with this latter contention and reverse and remand for trial. We need not consider the other arguments advanced by the parties since, under any of those theories, the action would not be time–barred.

■ The primary duty for cleaning the oil spill, was of course, upon the Companies.

*Cf. Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967) (removal of sunken barges); *United States v. Perma Paving Co.*, 332 F.2d 754 (2nd Cir. 1964) (removal of man–made shoal). *See also Askew v. American Waterways Operators, Inc.*, 411 U.S. 325, 332–334, 93 S.Ct. 1590, 1595–1596, 36 L.Ed.2d 280 (1973).

Section 1321(c)(1) of the Act provides:

Whenever any oil or a hazardous substance is discharged, . . . the President is authorized to act to remove or arrange for the removal of such oil or substance at any time, unless he determines such removal will be done properly by the owner or operator of the vessel, onshore facility, or offshore facility from which the discharge occurs.

33 U.S.C. § 1321(c)(1). The President is thus authorized to arrange for removal of the spill unless he determines that the removal will be done properly by the owner or operators of the facilities involved. In order to avoid the obvious consequences of possible delay or ineffectiveness Congress, with this section, provided the Executive Branch an option. The option is sufficiently broad to effect the Congressional purpose of efficiently removing contaminants and fixing responsibility. The President may act or decline to act. Presumably, once a government cleanup is started it can be delayed at the direction of the President. He could direct a responsible party to become involved. Government action in appropriate circumstances might be terminated prior to completion.

The cause of action for recouping expenses incurred by the government does not fully accrue until the government has completely exercised its option and completed the cleanup operation. Supportive of this logic is 28 U.S.C. § 2416, which provides:

For the purpose of computing the limitations periods established in section 2415

---

1. The opinion of the late Judge Blair is adopted as the principal part of the dissent. It should be noted, however, that the language of the district court quoted in the dissent was not considered in the majority opinion. The reasoning was not approved or disapproved because it was not necessary to the disposition of the case. As is discussed, *infra*, the conclusions of the majority are based on a later accrual date for the government's cause of action.

[28 U.S.C.S. § 2415], there shall be excluded all periods during which—

. . . . .

(c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances . . . .

*See also United States v. Boyd*, 520 F.2d 642, 645 (6th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976).

■ The Companies correctly contend that the September 12 removal completion date was not argued to the district court as the accrual date for the cause of action. They argue that this issue cannot be considered on appeal. It is true that this Court does not generally pass on issues not previously raised. *United States v. One 1971 Mercedes Benz*, 542 F.2d 912 (4th Cir. 1976); *United States v. Chesapeake & Ohio Ry. Co.*, 215 F.2d 213 (4th Cir. 1954). *See also Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). There are instances, however, when issues not previously raised should be entertained on appeal. If the error is "plain" and a refusal to treat it would result in the denial of fundamental justice, it should be decided. In *Ricard v. Birch*, 529 F.2d 214 (4th Cir. 1975) we considered an issue which was raised for the first time on appeal.

The defendant argues, however, that the statute should not be applied because it was not raised in the district court. Ordinarily, of course, we do not pass on questions that were not presented to or considered by the district court, but orderly rules of procedure do not require sacrifice of the rules of fundamental justice. "Indeed, if deemed necessary to reach the correct result, an appellate court may *sua sponte* consider points not presented to the district court and not even raised on appeal by any party." *Id.* at 216, *quoting Washington Gas Light v. Virginia Electric & Power Co.*, 438 F.2d 248 (4th Cir. 1971). *See also Walker Manufacturing Co. v. Dickerson, Inc.*, 560 F.2d 1184, 1187 n. 2 (4th Cir. 1977). This Court has also held:

Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.

*Washington Gas Light, supra* at 250, *quoting Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941).

The facts concerning the removal of the oil spill are documented in the record by the Coast Guard investigative report. The September 12 completion date is undisputed.[2] The issue of whether it was the critical date should have been obvious to the parties and to the trial court. The Government's failure to previously argue the September 12 date, therefore, does not inhibit us from considering it.[3] It would be unjust to impose the costs on the government which was

---

**2.** The record is brief because the case was decided on the defendants' motion for summary judgment. The Coast Guard investigative report was an integral part of the record. It was not only not contested, but was obviously an independent factual source. The defendants did not at trial nor on appeal contest the factual accuracy of the statement that the final clean-up was not completed until September 12. They only assert that the date of the spill rather than the date of clean-up completion initiates the statute of limitations.

**3.** The dissent stresses the government's admissions during discovery proceedings that August 10 was the day on which the cause of action

accrued because the spill occurred on that date. There is no question, of course, that the spill occurred on August 10, just as there is no question that the clean-up operation was not completed until September 12. The issue as to whether the cause of action accrued on the date of the spill or the date of the clean-up completion, however, is a question of law. The majority believes, for the reasons expressed in the body of the opinion, that under the correct interpretation of the applicable statutes the government's cause of action did not finally accrue until the clean-up operation was completed.

in no way involved in the spill while permitting the perpetrators of the damage to escape liability.

The case is reversed and remanded for proceedings consistent with the views expressed in this opinion.

*REVERSED AND REMANDED.*

WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

## I

I would affirm on the opinion of Judge Blair which, because it was not published and Judge Blair having since died, I now copy below and adopt as my own.

"On August 10, 1975, while the barge SHAMROCK was taking on oil at Shell Oil Company's petroleum terminal in Baltimore, Maryland, over 3000 barrels of oil spilled into the Patapsco River. More than three years later, in September 1978, the United States brought this action against Shell Oil, the SHAMROCK and her owner, Harbor Towing Corporation, to recover the amount the government expended to clean up the oil. The defendants have moved for summary judgment under Fed.R.Civ.P. 56 on the grounds that the suit is barred by the applicable statute of limitations, 28 U.S.C. § 2415(b).

"That section provides that every action for money damages brought by the United States 'which is founded upon a tort' is barred unless filed within three years after the right of action accrues. The defendants reason that an action to recover the costs of removing oil pollution is an action 'founded upon a tort.'

"The government responds that this action is founded not upon a tort but upon the sovereign's right under the Constitution to insure and protect the cleanness of its navigable waters, a right, it is argued, which is not subject to any statute of limitations. The complaint did not specify the theory of liability supporting this action. The government argues now that there are some six possible theories of recovery,[1] all intertwined, and all 'founded' upon the authority of the sovereign to abate pollution. This argument has been foreclosed, however, by the recent decision of the Fourth Circuit in *Steuart Transportation Company v. Allied Towing Corporation*, 596 F.2d 609 (4th Cir. 1979) (No. 77–2426, decided April 10, 1979). There the court decided that the Federal Water Pollution Control Act of 1972, 33 U.S.C. § 1321(f)(1) (FWPCA) affords the exclusive federal remedy for the recovery of oil pollution cleanup costs. The question before this court then is simply whether an action founded upon the FWPCA, § 1321(f)(1) is subject to the limitation of 28 U.S.C. § 2415.

"This court concludes that it is. There is no suggestion in the legislative history of the FWPCA that Congress intended to place the government above duly–enacted statutes of limitations. Moreover, the government has not been able to cite any case which has so held. It is true that oil pollution is an offense against the United States, not actionable by any private citizen. But the fact that the government alone has standing to recover cleanup costs from polluters does not, without some affirmative legislative indication, give it limitless power to pursue its citizens whenever and wherever it chooses. The government also has the sovereign right to prosecute crimes, but there too it must observe appropriate statutes of limitation. 18 U.S.C. §§ 3281 *et seq.*

"Having decided that a statute of limitations must apply, the question is which one. The defendant argues that an ac-

---

1. The government asserts the following sources of liability:

    1. Under the Rivers and Harbors Act of 1899, for injunction, damages, and penalty.
    2. Under the general maritime tort law.
    3. Under the common law of nuisance, for an injunction or its monetary equivalent.
    4. In equity, for an injunction or its monetary equivalent.
    5. In equity, for restitution.
    6. Under the Federal Water Pollution Control Act, 1972 (FWPCA), for an injunction, cleanup costs, and penalty.

tion brought under the FWPCA is an action 'founded upon a tort' and therefore subject to the three–year limitation of 28 U.S.C. § 2415(b). This court agrees. It is clearly not 'contract,' and although such an action could arguably be labeled one in quasi–contract, on the theory that the polluter is unjustly enriched by the government's undertaking to clean up,[2] it seems more likely from the face of the statute that the wrong Congress sought to remedy is a tortious one.

"The statute, 33 U.S.C. § 1321(f)(1), provides that

(f)(1) Except where an owner or operator can prove that a discharge was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) an act or omission of a third party without regard to whether any such act or omission was or was not negligent, or any combination of the foregoing clauses, such owner or operator of any vessel from which oil or a hazardous substance is discharged in violation of subsection (b)(3) of this section shall, notwithstanding any other provision of law, be liable to the United States Government for the actual costs incurred under subsection (c) of this section for the removal of such oil or substance by the United States Government in an amount not to exceed, in the case of an inland oil barge $125 per gross ton of such barge, or $125,000, whichever is greater, and in the case of any other vessel, $150 per gross ton of such vessel (or, for a vessel carrying oil or hazardous substances as cargo, $250,-000), whichever is greater, except that where the United States can show that such discharge was the result of willful negligence or willful misconduct within the privity and knowledge of the owner, such owner or operator shall be liable to the United States Government for the full amount of such costs. . . .

It would not be a fair reading of the law to hold that where Congress spoke of 'negligence' and 'willful misconduct' it was not talking about tort. Accordingly, the statute of limitations which applies to tort actions brought by the United States, 28 U.S.C. § 2415(b), bars the government from recovering its expenses incurred in cleaning up the defendants' spilled oil under 33 U.S.C. § 1321(f), and summary judgment must be granted for the defendants."

There are three additional short paragraphs in the opinion which deal only with the issuance of a certificate under FRCP 54(b) and entry of an order for summary judgment. They have nothing to do with the merits of the case decided here.

## II

### A.

Specifically, I dissent from the majority's adoption of September 12, 1975 as the accrual date for the tort.

I disagree with the majority's consideration of this issue in the first place because it was not presented to the district court. E. g., *United States v. One 1971 Mercedes Benz*, 542 F.2d 912 (4th Cir. 1976). No exceptional circumstance is shown or claimed for not presenting the issue, except the government lost the case.

And not only was the issue not presented, it was precluded from consideration by the solemn writing of the government, signed and verified by an Assistant Attorney General of the United States as well as an Assistant United States Attorney. The majority ignores the government's answer on oath in the district court that the accrual date for its claim is August 10, 1975.

Interrogatory No. 12 submitted by Shell to the government and its answer are as follows:

12. Identify the date on which you contend that this claim, or any part thereof,

---

**2.** This court cannot accept this argument for the reason that by the very terms of the Act, the primary duty to take steps to abate pollution rests with the president, not with the pol-

luter. 33 U.S.C. § 1321(c)(1). Thus it would be legally impossible for the polluter to be "unjustly enriched" by the government's performance of its own duty.

against Shell accrued and further state, with particularity, all facts and reasons on which you rely in support of your contention.

Answer 12. August 10, 1975, by reason of the fact that oil from Shell's facility entered the Patapsco River on that date.

The government has not moved to be relieved of its answer even if such could be done. Thus, it is bound by the August 10th date. With August 10th as the accrual date, the government's action is time barred. The suit was filed September 6, 1978.

Also, the record does not support the majority's conclusion, variously stated, that the "September 12 completion date is undisputed." At 1111. See also at p. 1110, n. 1; p. 1111, n. 2; p. 1111, n. 3. Not only is it disputed, in the only chance Shell had to contest the September 12th date, it states in its brief, at p. 22, n. 12:

> The Government compounds its misconduct with an improper and obviously incorrect factual representation (wholly unsupported by the record) that "the cleanup was not completed until September 12, 1975."

The brief record made in this case does not so conclusively establish when the cleanup was completed that it is not open to question. No copy of a complete cleanup report is included in the record. "On–the–Scene–Coordinator–Notes" are included by the government with its responses to Shell's interrogatories, but these notes cease on August 18th. Those notes reveal that actual cleanup began on August 10, the day of the spill. By August 12, approximately 144,000 gallons of oil had been removed, with cleanup estimated at 75% complete. J & L Ind. were released from future cleanup activities on August 16th. As stated, these notes provide a summary of activities only until August 18th. A letter report dated January 12, 1976 from the U. S. Coast Guard's Investigating Officer at Baltimore to the Commander of the Fifth Coast Guard District is also included with the government's answer to interrogatories. That letter states that "The last oil was removed

from the water on 22 August 1975, and at that time the Coast Guard Strike Team departed. Final cleanup of small boats, beaches and booms was completed on 12 September 1975 and Clean Water, Inc. was released on that date." There is, however, not even documentation in the record to support the September 12th date beyond the bare letter which Shell is not bound to accept. The record reveals no details at all as to the cleanup between August 18 and September 12. Because Shell objects to the accuracy of the September 12 date, and the matter is the subject of a factual dispute, I disagree with the majority's adoption of that date. By so doing, this court is making a finding of fact as to a matter contested by the parties and not even considered by the district court.

An example within the majority opinion itself shows why this court should not engage in fact finding. Apparently to bolster the weight of evidence it relies on in its fact finding, the majority describes the letter of January 12, 1976 from the Coast Guard Investigating Officer to his superior as "an independent factual source." P. 1111, n. 2. Without further arguing the point, I can think of no less "independent" a source than a letter from one investigating officer to another, especially untested as it is by way of cross–examination or even discovery.

Until this appeal, Shell had never been given a chance to dispute the September 12th date, and its disputation of that date in its brief here, which I have quoted, is not only unheeded and unmentioned by the majority, it is characterized in the opinion so that the reader is told that Shell does "not on appeal contest the factual accuracy of the statement." P. 1111, n. 2. The majority can point to nothing in the record or briefs to support its statement that there is no contest of the September 12th date for the reason that there is nothing there except that which I have quoted. This bare statement is, I think, too slender a reed to support the opinion.

**B.**

Although I agree that the action here sounds in tort, I believe that the accrual date is August 10, 1975, the date of the spill. That is the date on which the harm occurred, thus making the cause of action complete. *Restatement (Second) of Torts*, § 899, Comment c. at 441 (1979). The government finds itself in no different position than any plaintiff who, with a claim for injury to his person, must file suit within a statutory time from the day his injury happened, although he may be required to pay large bills to physicians and hospitals for treatment occurring after the statute has run.