**George O. ALDRIDGE and Daisy M. Aldridge, Appellees,**

v.

**BALTIMORE AND OHIO RAILROAD COMPANY, a body corporate, Appellant,**

v.

**Keith D. BRELSFORD and Erie Insurance Exchange, Defendants.**

No. 84–1185.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 10, 1985.

Decided May 1, 1986.

Rehearing In Banc Granted June 24, 1986.

George F. Pappas (H. Russell Smouse, Melnicove, Kaufman, Weiner & Smouse, P.A., C. Keith Meiser, on brief), for appellant.

Richard R. Beauchemin (Norris W. Tingle, Geoffrey J.C. Boyd, on brief), for appellees.

Before SPROUSE and WILKINSON, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

SPROUSE, Circuit Judge:

The Baltimore & Ohio Railroad Company (the Railroad) appeals from a judgment entered against it after a jury verdict in the sum of $196,800 in favor of George Aldridge in this Federal Employers' Liability Act (FELA) suit. 45 U.S.C. §§ 51–60 (1982). Aldridge filed suit after he suffered a neck injury while working for the Railroad as a crossing watchman. The Railroad contends that the district court erred in not granting its motions for a directed verdict or a judgment n.o.v.; in allowing Aldridge's intervening insurance company to reveal to the jury that the Railroad's co-defendant was uninsured; in admitting into evidence a city ordinance relating to the length of time a train can remain on a crossing; and in failing to require Aldridge to prove the present value of his claim for future lost wages or, in the alternative, to instruct the jury to reduce any award for future lost wages to present value. We affirm.

George Aldridge was a crossing watchman for the Railroad assigned to the Baltimore Street crossing in Cumberland, Maryland. In the early morning of September 9, 1978, a Railroad engine engaged in switching cars approached the Baltimore Street crossing. As the engine approached, Aldridge manually activated the traffic lights to a red position for all lanes of vehicular traffic which converged on the crossing. The engine proceeded onto the crossing and stopped in a position by which it blocked ½ to ⅞ of Baltimore Street. Aldridge then positioned himself in the portion of the crossing not occupied by the engine. He carried a light in each hand. Keith Brelsford, a highly intoxicated motorist, stopped short of the crossing, but grew impatient and shouted to Aldridge his desire to cross. Despite Aldridge's warning not to cross, Brelsford repeatedly accelerated his engine, then, without warning, released his brakes and drove his car across the opening of the crossing, striking Aldridge and knocking him to the ground. Brelsford drove on without stopping.[1]

There was considerable evidence concerning the Railroad's procedure for switching cars in the vicinity of street crossings. The normal procedure was either to block the entire crossing or to cut the train so that traffic could pass. It was uncommon to block only part of the crossing. In addition, the Railroad's internal operating rules required:

The engine bell must be rung when an engine is about to move, except after momentary stops in continuous switching movements. It must be rung while approaching and passing public crossings at grade and stations, and through tunnels.

There was conflicting testimony concerning the length of time the engine was stopped on the crossing prior to the accident and whether its bell was ringing. Aldridge's evidence was that the engine was stopped on the crossing for approximately fifteen to twenty minutes and the engine bell was not ringing. The Railroad's evidence indicated that the engine was stopped on the crossing for only two to five minutes and the engine bell was ringing the entire time.

Following the accident, Aldridge was taken to the hospital by ambulance, x-rayed, and released. He continued to receive medical attention for his neck, including medication, therapy, and traction, and he was authorized to return to work approxi-

---

1. Later that day, Brelsford presented himself to the Cumberland Police. He admitted driving the car which struck Aldridge and that he had consumed eight or nine beers prior to the accident. Brelsford was charged with failure to remain at the scene of an accident resulting in bodily injury, reckless driving, and failure to obey a railway watchman. He was found guilty by a Maryland court and fined $750. He was later convicted of common law assault and sentenced to ten days in jail.

mately seventy-five days after the accident.[2] After returning to his job at the crossing, Aldridge continued working until January 3, 1981. At that point, according to his testimony, he stopped working because he could no longer stand the pain in his neck.

Medical evidence at trial indicated that Aldridge did not suffer neck pain prior to the accident, that the accident caused the pain by aggravating a preexisting neck condition, and that the pain will be of a permanent duration. It is unquestioned that Aldridge had a preexisting degenerative condition between three vertebrae in his cervical spine which would have continued to degenerate even without his injury from the accident. The Railroad's medical expert admitted, however, that trauma imposed upon the preexisting neck condition would likely produce pain even if none previously existed. There was conflicting evidence concerning Aldridge's ability to work after January 3, 1981. Aldridge testified that he was unable to work after that time, but medical experts testified that he remained capable of performing his duties as a crossing watchman.

### A.

The Railroad contends that there was insufficient evidence to support a finding of negligence, future loss of earnings, or proximate cause of the injury. In testing the sufficiency of the evidence, we must view the evidence in the light most favorable to the jury's verdict and afford the prevailing party the benefit of all reasonable inferences which can be drawn from the evidence. *Krotkoff v. Goucher College,* 585 F.2d 675, 677 (4th Cir.1978). Applying this standard, we believe there is adequate evidence to support the jury's conclusion on each of the points challenged by the Railroad.

First, the Railroad asserts that even under the less stringent FELA standards there was insufficient evidence to permit the case to go to the jury on the issue of liability. It argues that Brelsford's negligence was the sole cause of Aldridge's injury. We agree, of course, that Brelsford's negligence or intentional conduct was the predominant cause of Aldridge's injuries. There is no question, however, that there was sufficient evidence from which a jury could find that the Railroad was negligent in the manner in which it blocked the crossing. While there was conflicting evidence on several factual issues, considering the evidence, as we must, in a light most favorable to Aldridge, the train occupied the crossing for a period of fifteen to twenty minutes, and, rather than block the entire crossing, the Railroad left half of the street open. In addition, the jury could have found that the Railroad employees were negligent in not ringing the engine bell. It was reasonable for the jury to infer that the Railroad's negligence was a factor in provoking Brelsford to react in the foolish and criminal manner which resulted in Aldridge being injured. In sum, we are unable to say that the trial court erred in not ruling as a matter of law that the Railroad's negligence did not "play[ ] *any* role in producing the harm." *Gallick v. Baltimore & Ohio Railroad Co.,* 372 U.S. 108, 116, 83 S.Ct. 659, 664, 9 L.Ed.2d 618 (1963). *Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); *Coray v. Southern Pacific Co.,* 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208 (1949).

Reasonable foreseeability is, of course, an essential ingredient to establishing negligence in a FELA case, as in other negligence actions. In the instant case, however, as in *Gallick,* the jury was instructed on the requirement of reasonable foreseeability. *Gallick,* 372 U.S. at 118, 83 S.Ct. at 665. From their verdict in favor of Aldridge, it is clear that the jury concluded that the Railroad should have realized the increased likelihood of a car striking Aldridge under the circumstances. *Id.* at 118–19, 83 S.Ct. at 665–66. The evidence sufficiently supports that conclusion. The

---

**2.** Because he took vacation time after his medical release, Aldridge did not actually return to work until December 24, 1978, some 106 days after the accident.

crossing was partially blocked for at least fifteen minutes in the early hours of the morning. There was testimony that occasionally motorists would illegally cross in front of a train when the crossing was only partially blocked. It is certainly not difficult to anticipate that motorists using the streets of Cumberland, Maryland might have an infinite number of reasons to be anxious to reach their destinations. Likewise, it should be easily foreseeable that many motorists, inebriated or not, might be unduly excited or frustrated because of real or imagined intrusions upon their rights to use the common streets and highways. We cannot say as a matter of law that a defendant railroad should not have reasonably foreseen that negligence potentially affecting the broad spectrum of highway users would not have incited some senseless motorist to take reckless action.

■ The Railroad also attacks the sufficiency of the evidence relating to Aldridge's inability to perform his duties as a crossing watchman. We disagree with the Railroad and find the evidence sufficient to make this ultimate factual issue a question for the jury to resolve. It is true that this evidence consisted solely of Aldridge's testimony that the pain in his neck was so great that he could not work. His testimony, however, was not discredited, and although there was expert evidence to the contrary, the ultimate authority for weighing the totality of evidence reposes in the jury. *Price v. Admiral Corp.*, 527 F.2d 412, 415 (5th Cir.1976) (jury at liberty to accept or reject expert testimony). *See Sentilles v. Inter-Caribbean Shipping Corp.*, 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959).

■ Similarly, the Railroad's third argument that there was insufficient evidence to prove that Aldridge's inability to work was proximately caused by the accident involves factual issues properly resolved by the jury. There is no question that Aldridge had a preexisting arthritic condition in his neck. He testified, however, that he had no pain prior to the accident and that after the accident the pain was so severe

that it eventually precluded him from performing his job. Medical experts, including those for the Railroad, testified that Aldridge never complained of pain prior to the accident and that the injury he received could have aggravated his preexisting neck condition to the extent that it would have caused pain where none previously existed. We believe this was sufficient evidence upon which the jury could find that Aldridge's injury and resulting inability to work were caused by the accident and not his preexisting condition. *Sentilles*, 361 U.S. at 109–10, 80 S.Ct. at 175.

B.

The Railroad's remaining arguments are that the district court committed errors of law in allowing Aldridge's intervening insurance company to advise the jury that Brelsford was uninsured; in admitting into evidence a Cumberland municipal ordinance relating to the length of time a train can remain on a crossing; and in failing to require Aldridge to prove the present value of his claim for future lost wages or, in the alternative, to instruct the jury to reduce any such award to present value.

■ We need not linger long over the first of these arguments. Since Brelsford was uninsured, Aldridge's insurance carrier, Erie Insurance Exchange (Erie), was allowed to intervene as a party defendant pursuant to the uninsured motorist provision of Aldridge's policy. In its opening statement, Erie explained its presence as a defendant to the jury, including the fact that Brelsford was uninsured. As a result, the Railroad moved for a mistrial, which the district court denied. The general rule, of course, is that the coverage or noncoverage of a party by liability insurance is not probative of any issue in a negligence case and introduction of that subject is reversible error. *Langley v. Turner's Express, Inc.*, 375 F.2d 296 (4th Cir.1967). This case, however, did not involve the typical instance of either plaintiff or defendant apprising the jury of the presence or absence of insurance. Erie was a party by intervention, and a jury might well have

been mystified as to why an insurance company was a co-defendant in a case involving a railroad and a named individual as the other defendants. Under these circumstances an explanation to the jury could have avoided possible confusion and allowed the jury to concentrate on the real issue in the case. The possibility of prejudice to the Railroad, moreover, was minimal.

■ The Railroad next argues that admission of the Cumberland municipal ordinance relating to the amount of time a train may block a crossing was error because the ordinance was enacted to control traffic, therefore, evidence of a violation is not probative of negligence on facts such as involved here. Aldridge contends that the Cumberland ordinance is broader than most similar ordinances and was intended to prevent both delays of traffic *and* accidents such as the one involved in this case. If so, the ordinance might be probative, but it is not necessary to decide that question. The Railroad did not object to the admission of the ordinance, and we simply will not consider objections not raised at trial in the absence of plain error. *Bryant v. Sears, Roebuck & Co.*, 435 F.2d 953, 956 (4th Cir.1970); *cf. United States v. Barge Shamrock*, 635 F.2d 1108, 1111 (4th Cir. 1980), *cert. denied*, 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 107 (1981). The admission of the ordinance was not plain error, and we perceive no fundamental injustice in now refusing to consider this previously unraised point. Moreover, prior to closing arguments, the trial court struck the ordinance from evidence and instructed the jury that the ordinance was not applicable and that they were to disregard it. We think any error in admitting the evidence was cured by the instruction to disregard it. *See Purex Corp. v. St. Louis National Stockyards Co.*, 374 F.2d 998 (7th Cir.), *cert. denied*, 389 U.S. 824, 88 S.Ct. 59, 19 L.Ed.2d 77 (1967). *See generally* 11 C.

Wright & A. Miller, Federal Practice and Procedure § 2885 (1973).

The Railroad's last argument relates to the longstanding principle of damages that the amount of future lost wages must be reduced to present value. *Chesapeake & Ohio Railway Co. v. Kelly*, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916). At the close of the trial, Aldridge argued to the jury that it should value his future lost wages at $16,306 a year for the next seven years until age 65 for a total of $114,142. The Railroad moved for a mistrial on the grounds that Aldridge's failure to introduce evidence from which the jury could reduce future lost wages to present value was reversible error. The district court denied that motion and the Railroad's subsequent motion for an instruction that the jury must discount any award for future lost wages to present value. The jury returned a verdict in favor of Aldridge in the amount of $196,800.

■ Awards for loss of future earnings in federal actions should be reduced to present value. *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 536–37, 103 S.Ct. 2541, 2550–51, 76 L.Ed.2d 768 (1983).[3] Thus, as a matter of federal law, the refusal to receive evidence of the present value of future lost wages or the failure to give a requested instruction on present value is error. *St. Louis Southwestern Railway Co. v. Dickerson*, —— U.S. ——, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985). Courts, however, must apply these principles consistent with the tenet that instructing the jury on a theory which is unsupported by the evidence presented at trial is also error. *See Salem v. United States Lines Co.*, 370 U.S. 31, 39, 82 S.Ct. 1119, 1124, 8 L.Ed.2d 313 (1962) (Harlan, J., dissenting in part and concurring in part); *Wilmington Star Mining Co. v. Fulton*, 205 U.S. 60, 77–79, 27 S.Ct. 412, 418–19, 51 L.Ed. 708 (1907); *Krizak v. W.C. Brooks & Sons, Inc.*, 320 F.2d 37, 38–41 (4th Cir.1963).

---

**3.** Concomitantly, it is appropriate to increase an award for loss of future earnings by a formula which accounts for reduction in future value by the ravages of inflation. *Pfeifer*, 462 U.S. at 538–51, 103 S.Ct. at 2551–57.

The Supreme Court has not allocated the burden of proceeding or the burden of persuading the jury as to either the reduction to present value or the increase for inflation. Simply stated then, the issue is whether reduction to present value is an indispensable element of the plaintiff's claim for future lost wages which he must always prove by specific evidence or whether, absent contest by the defendant, the plaintiff sufficiently proves his claim by evidence of the gross amount of those lost wages. This approach, however, overlooks many complicated issues which arise in this amorphous area combining law and economics. As the Supreme Court said in *Pfeifer*, "the question of lost earnings can arise in many different contexts. In some sectors of the economy, it is far easier to assemble evidence of an individual's most likely career path than in others." 462 U.S. at 547, 103 S.Ct. at 2555. Added to this obstacle of prediction are the many factors which can complicate the calculation of present value admirably discussed in *Pfeifer*: Should the discount rate be a "market" interest rate or a "real" interest rate adjusted for inflation, and, if the latter, for what period or periods of inflation? 462 U.S. at 541–43 & n. 26, 103 S.Ct. at 2552–54 & n. 26. To prove that the gross amount of future wages established should be increased because projected inflation is greater than projected interest rates, what type of inflation should a plaintiff use—pure economic inflation or the various types of individual and societal inflation discussed by the Court in *Pfeifer*, e.g., future production efficiency, increased skills, and differing collective bargaining approaches? 462 U.S. at 535–36, 549–51 & n. 31, 103 S.Ct. at 2549–50, 2556–57 & n. 31. These factors make it clear that the question of allocating the burden of proof is not one dimensional.

■ The Ninth Circuit resolved the problem by holding in effect that the party who would benefit from the application of a particular economic formula has the burden of producing competent evidence to prove it. *Alma v. Manufacturers Hanover Trust*, 684 F.2d 622, 626 (9th Cir.1982).

*Contra DiSabatino v. National Railroad Passenger Corp.*, 724 F.2d 394, 395 (3d Cir.1984) (burden of producing evidence of present value of future lost wages rests on plaintiff). If a defendant wishes the factfinder to reduce the gross amount of future lost wages to present value, he can present evidence probative of an appropriate interest rate and method of discount. The plaintiff, in turn, may offer evidence tending to prove that the award should be increased because inflation will diminish its current value. In that case, the plaintiff must show what kind of and how much inflation. *See Pfeifer*, 462 U.S. at 534–36, 538–51, 103 S.Ct. at 2549–50, 2551–57. We think this is a sensible approach. In most cases, the factors are simple, and it should be a light burden for the defendant to prove a proper discount rate or for the plaintiff to prove the probable effects of inflation. As noted by the Court in *Pfeifer*, " '[t]he average accident trial should not be converted into a graduate seminar on economic forecasting.' " 462 U.S. at 548, 103 S.Ct. at 2556 (quoting *Doca v. Marina Mercante Nicaraguense, S.A.*, 634 F.2d 30, 39 (2d Cir.1980), *cert. denied*, 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 351 (1981)). To the extent that the issue in a given case necessarily becomes difficult, it seems fair to place the burden of procuring and presenting economic evidence on the litigant who would benefit from its acceptance by the factfinder.

■ A trial court, of course, must admit relevant evidence of discount or inflationary rates offered by either party and grant a tendered instruction based on that evidence. In the absence of such evidence, however, the court does not commit error by failing to instruct the jury as to the appropriate economic adjustment. If the litigants are represented by normally competent counsel, any omission of proof or failure to proffer instructions probably will have resulted from deliberate trial strategy. Defense or plaintiff's counsel may well be satisfied with the unadjusted amount of future lost wages—fearing the consequences of encouraging the factfinder

to consider the use of other economic factors. As the Sixth Circuit stated in *Kokesh v. American Steamship Co.,* 747 F.2d 1092, 1096 (6th Cir.1984):

> Litigants in the federal courts frequently agree to forego the time and expense involved in proving inflationary trends and discount rates in trials involving lost future wages. In many cases, defense counsel may wisely conclude that there is little benefit to be gained and substantial prejudice to be risked in giving the jury a very particularized instruction on the calculation of damages.

██ In the instant case, the litigants were represented by competent counsel. Aldridge proved the dollar amount of his future lost earnings. It would have been to the Railroad's advantage to give the jury an opportunity to reduce this amount by introducing competent evidence from which the jury could have determined its present value.[4] We do not think the Railroad, having failed to present such evidence at trial, should be permitted on appeal to complain of its absence. *See Deakle v. John E. Graham & Sons,* 756 F.2d 821, 830–31 (11th Cir.1985).

We also think it would have been extremely confusing to the jury to ask it to make these economic adjustments without an evidentiary basis or an explanation by experts as to how such calculations could be made. Application of the principle of present worth (and, likewise, the principle of indexing for inflation) is beyond the understanding and capabilities of most lay persons serving on a jury. *Kelly,* 241 U.S. at 491, 36 S.Ct. at 632. Without evidence of how to adjust for present value or inflation, a jury instructed to make such calculations on its own might well present an award based on sheer speculation.

In the absence of any evidence by which future lost wages could be reduced to present value, we see no error in the district court's failure to grant a mistrial or to instruct the jury to undertake the task by utilizing its own initiative.

In view of the above, the decision of the district court is affirmed.

AFFIRMED.

BOYLE, District Judge, concurring:

I concur in the result reached by the majority and join in their reasoning on all but one issue. That issue is the allocation of the burden of proof for the present value of lost future earnings. In my opinion, that burden must rest with the plaintiff.

We are in agreement that lost future earnings must be reduced to their present value. *St. Louis Southwestern Railway Company v. Dickerson,* —— U.S. ——, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985), *Jones and Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983).

The majority places the burden on the defendant to prove this material element of plaintiff's claim.

A defendant has no burden to prove any of the contested material issues of fact in a plaintiff's cause of action. The present value of lost future earnings is not an affirmative defense but rather a material element of the plaintiff's claim for that special damage.

If the plaintiff fails to offer any evidence of one or more of the elements of this special damage, then as a matter of law, the plaintiff's proof has failed and that claim should not be submitted to the jury.

The plaintiff has the burden at all times to prove by some competent evidence each of the material facts of his claim. Where part of plaintiff's case, as it was here, is for the special damage of lost future earnings, then plaintiff must offer some evidence of the earnings, the future term, and the present worth of this sum.

In order to test the sufficiency of the plaintiff's evidence, a defendant must exer-

---

**4.** Likewise, it would have been to Aldridge's advantage to give the jury an opportunity to increase this amount by the forces of inflation.

Therefore, it was his prerogative and responsibility to introduce competent evidence which would have allowed the jury to do so.

cise its rights under Rule 50 of the F.R. Civ.P. at the appropriate time at trial. This the defendant failed to do, and for this reason I concur in the result.

Rule 50 provides that a party making the motion base it on specific grounds. The defendant moved pursuant to Rule 50 and based it on "the issue of liability". This motion was renewed at the end of all of the evidence by the defendant "for precisely the same reasons—cited at the close of the plaintiff's case".

The defendant never challenged the sufficiency of the plaintiff's evidence on the special damage of lost future earnings. In particular, the defendant allowed the plaintiff to proceed unchallenged through argument without any evidence on the present worth of the lost future earnings. A defendant must make a timely challenge to the sufficiency of the plaintiff's case and the failure to do so will bar relief on motion for JNOV and here on appeal. Under the circumstances presented to the trial judge he correctly refused to charge on the present worth of these lost future wages.

Likewise, the trial judge correctly refused to allow a mistrial based on plaintiff's argument. The argument was faithful to the evidence, even if the evidence was insufficient in law.