# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

AGATHA SOKOLOSKI,
         *Plaintiff-Appellant,*

v.

METLIFE INSURANCE COMPANY,
         *Defendant-Appellee.*

No. 01-1963

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-00-2314-WMN)

Argued: January 24, 2002

Decided: March 7, 2002

Before WILLIAMS and TRAXLER, Circuit Judges, and
Cynthia Holcomb HALL, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Affirmed by unpublished opinion. Judge Traxler wrote the majority
opinion, in which Judge Williams joined. Senior Judge Hall wrote a
dissenting opinion.

_____

## COUNSEL

**ARGUED:** Wayne Stuart Goddard, CUOMO & GODDARD, L.L.P.,
Towson, Maryland, for Appellant. John Snowden Stanley, Jr.,
SEMMES, BOWEN & SEMMES, P.C., Baltimore, Maryland, for
Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

TRAXLER, Circuit Judge:

Baltimore Gas and Electric Company ("BG&E") maintained a group disability plan for the benefit of its employees. Prior to September 1, 1997, long-term disability benefits were funded through a group disability policy issued to BG&E by Life Insurance Company of North America, an affiliate of the CIGNA insurance group ("CIGNA"). As an employee of BG&E, Agatha Sokoloski was enrolled in and covered under the CIGNA plan. On September 1, 1997, Metropolitan Life Insurance Company ("MetLife") replaced CIGNA as the disability carrier and issued a group disability policy that took effect on September 1.

Under the terms of the MetLife plan, an employee who was employed by BG&E on September 1, 1997 would be eligible to participate in the plan as long as the employee had completed one full month of "active work" prior to September 1, 1997. There is no dispute that Sokoloski met the eligibility requirements for the MetLife plan. For coverage under the MetLife plan to become effective for an eligible BG&E employee, the employee must have been "Actively at Work" on September 1, 1997.[1] The MetLife plan provides that "if [the employee is] not Actively at Work, because of Disability on the date [the employee's] insurance would otherwise become effective, it will become effective on the day [the employee] return[s] to Active Work." J.A. 41.

On September 1, when the MetLife plan replaced the CIGNA plan,

---

[1]Under the MetLife plan, an employee is considered "Actively at Work" if "on a day which is one of [the employee's] scheduled work days . . . [the employee is] performing in the usual way all of the regular duties of [the employee's] work for the Employer on that day, . . . at one of the Employer's usual places of business . . . ." J.A. 37.

Sokoloski was out on paid sick leave. She had stopped working on August 25, 1997, and was awaiting knee surgery that was performed on September 9. According to Sokoloski, she stopped working on August 25 and began resting in bed before surgery because her back and her knee were bothering her, she was having difficulty walking, and "it was just too difficult for me to work as far as the pain." J.A. 109.

In November 1997, Sokoloski submitted a claim for long-term disability benefits under the CIGNA plan, claiming that chronic pain in both knees and her back prevented her from performing any occupation. CIGNA denied Sokoloski's claim. With respect to Sokoloski's knee condition, CIGNA concluded that she had recovered well from knee surgery and that she was "capable of performing [her] duties as a telemarketer upon [her] discharge from Physical Therapy" on October 28, 1997. J.A. 130. As for Sokoloski's back problem, CIGNA determined that because treatment for that condition did not begin until January 14, 1998, she had not yet satisfied the "Benefit Waiting Period," a prerequisite for disability benefits under the CIGNA plan that required Sokoloski to establish that she had been totally disabled for a 180-day period. J.A. 130. CIGNA did not, however, deny coverage of Sokoloski's back condition based on the September 1, 1997, effective date of the MetLife plan; in fact, CIGNA conceded that "a disabling condition may exist" but explained to Sokoloski that she needed to serve "an additional benefit waiting period . . . based on the start of this condition," J.A. 130, which CIGNA believed to be January 14.[2] CIGNA informed Sokoloski of her right to appeal the denial of her claim, but she did not pursue benefits under the CIGNA plan any further.

Instead, Sokoloski submitted her claim for long-term disability benefits to MetLife in May 1998. MetLife denied her claim because she was not "Actively at Work" on September 1, 1997, and never returned to work after that date. Therefore, according to MetLife, coverage under the MetLife plan never became effective for Sokoloski.

_____

[2]Although CIGNA identified the beginning of treatment on January 14, 1998, as the date that Sokoloski's disabling back condition began, she testified at her deposition that she stopped working prior to September 1, 1997, because of pain in her knee *and* her back.

Sokoloski followed the procedures under the MetLife plan for contesting this decision, but MetLife refused to change its position and continued to deny coverage.

Sokoloski filed a declaratory judgment action against MetLife in state court. MetLife removed the case to federal court on the grounds that Sokoloski's claims related to benefits under a plan regulated by the Employee Retirement Income Security Act (ERISA). *See* 29 U.S.C.A. § 1001 *et seq.* The parties filed cross-motions for summary judgment. The district court agreed with MetLife that coverage under the MetLife plan never became effective for Sokoloski because she was out with her disability and thus not "Actively at Work" on September 1, 1997. The district court concluded that the MetLife plan became effective for an employee who was not "Actively at Work" on September 1, 1997, on the day the employee returns to active work. Because Sokoloski never returned to work after August 25, 1997, the district court held that coverage under the MetLife plan never became effective. Thus, the court granted summary judgment to MetLife and denied Sokoloski's cross-motion for summary judgment. We affirm the decision of the district court for the reasons stated in its opinion.[3]

*AFFIRMED*

HALL, Senior Circuit Judge, dissenting:

I respectfully dissent.

Agatha Sokoloski had the bad fortune of requiring total knee replacement that resolved one problem but created another. In addition to bad knees, Sokoloski had a preexisting back condition which had required surgery in 1982. Sokoloski's back condition was sufficiently serious to require a pre-surgery evaluation from her orthopae-

---

[3]On appeal, Sokoloski argues, for the first time, that she may also be entitled to disability benefits under the "Continuity of Coverage" provision in the MetLife plan. We follow the rule "that issues raised for the first time on appeal generally will not be considered." *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998). Sokoloski has not given us a reason to withhold application of this general rule.

dic surgeon before she was cleared for her knee operation. While the knee surgery was a success, the difficulties that Sokoloski had with her knees and her use of crutches and a cane to help her walk exacerbated her back condition to the extent that it became a separate source of long term disability.

In addition, Sokoloski also had bad timing. Beginning on August 26, 1997 she took sick leave from BG&E on doctor's advice in order rest and stay off her legs in preparation for her operation. Due to her multiple disabilities, she did not return and was routinely terminated after six months once her sick leave had run out. But for the fact that the events that left Sokoloski disabled happened to coincide with a decision of her employer to switch insurance carriers, there is little question that she would have been eligible for long term insurance benefits with CIGNA and would probably not be before this Court.[1]

Finally, Sokoloski has also now gotten a bad result from the legal system. Like the majority, I agree with the District Court's holding that Sokoloski was not "Actively at Work" at any point on or after September 1, 1997 and was not covered on that basis. However, that should not end the matter. The Fourth Circuit has established that issues raised for the first time on appeal may be considered in "exceptional circumstances." *United States v. One 1971 Mercedes Benz 2-Door Coupe*, 542 F.2d 912, 915 (4th Cir. 1976). As Sokoloski has argued for the first time before this panel, and as the MetLife policy documents make clear, she has a second basis for claiming benefits under the MetLife plan: namely its "Continuity of Coverage" provi-

---

[1]It's true, as noted by the majority, that CIGNA denied Sokoloski coverage because it claimed she was not disabled between late October 1997 and January 14, 1998. However, even assuming this is true, it would not ultimately have denied her long-term benefits absent the change from CIGNA to MetLife. It would merely have changed her start date. CIGNA denied Sokoloski benefits because it claimed she was not continuously disabled for 180 days as calculated from August 25, 1997. For this reason she did not satisfy its benefits waiting period for a disability beginning on that date. At the same time, CIGNA did not dispute that she had a disability beginning in January 1998. Had she still been covered by the CIGNA policy at that time, (which she almost certainly was not), she would have been eligible for benefits for a disability beginning on that date.

sion. With respect to the majority, I submit that we are presented with exceptional circumstances and would remand for the simple factual determination necessary to resolve Sokoloski's alternate claim.

As noted in the last footnote of the majority's opinion, the MetLife plan includes a "Continuity of Coverage" provision, which states:

> In order to prevent loss of your coverage because of a transfer of insurance carriers, This Plan will provide coverage for you as follows:
>
> 1.  Failure to Be Actively at Work Due to Injury or Sickness
>
>     This Plan will cover you, if you:
>
>     a.  were covered under the prior carrier's plan at the time of transfer, and
>
>     b.  are not Actively at Work due to Injury or Sickness;
>
>     provided the required payment toward the cost of Long Term Disability Benefits is made to us for you.
>
> The benefit payable will be that which would have been paid by the prior carrier had coverage remained in force, less any benefit for which the prior carrier is liable.

The plain purpose of this provision is to provide coverage to persons like Sokoloski. The "Continuity of Coverage" clause anticipates that people in her position may not be able to qualify for long term benefits under the "Effective Dates" provision because they happen to have become unable to work during a period when coverage is being transferred.

For the most part, it is also plain that Sokoloski qualifies for coverage under the specific terms of the provision. It is not disputed that

she was "covered" under the prior policy at the time of transfer as required by part "a" of the "Continuity of Coverage" provision. Indeed, as a former employee with more than 20 years' service to her company, it should be evident that she had both earned and paid for her coverage. There is also no dispute that Sokoloski was not "Actively at Work" due to injury on or after September 1, 1997, the date the record indicates the policies transferred.[2] MetLife itself vigorously argues this very point. The only open issue in determining whether Sokoloski should be covered is therefore whether, as seems likely, BG&E paid premiums on behalf of Sokoloski to MetLife.

Especially in light of the obviousness of this claim, I believe it is wrong to deny Sokoloski benefits to which she is probably rightfully entitled on procedural grounds. Ordinarily, of course, this Court does not consider issues not previously raised. *Id.* In addition to considerations of judicial economy, this rule is rooted in the recognition that it is essential for fair process that each side have the opportunity to fully argue the merits and introduce relevant evidence. *See Hormel v. Helvering* 312 U.S. 552 (1941). However, the matter of what questions may be taken up for the first time on appeal is one left to our discretion. *Singleton v. Wulff* 428 U.S. 106, 121 (1976). Consistent with that discretion, when an error is "plain" and a refusal to address it would result in a denial of fundamental justice, it should be corrected. *United States v. Barge Shamrock,* 635 F.2d 1108, 1111 (4th Cir. 1980). This court has held:

> Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.

[2]While there is no direct evidence from CIGNA or BG&E in the record conclusively demonstrating that September 1, 1997 was the date that CIGNA ceased insuring employees of BG&E, the fact that the MetLife policy was purchased to begin on that day is strong indirect evidence to that effect.

*Washington Gas Light v. Virginia Electric & Power Cor.* 438 F.2d 248, 250 (4th Cir. 1971) (quoting *Hormel*, 312 U.S. at 557); *see also Barge Shamrock,* 635 F.2d at 1111; *Furka v. Great Lakes Dredge & Dock Co.* 755 F.2d 1085, 1089 (4th Cir. 1985). This is precisely what is at issue here.

The system has failed Agatha Sokoloski. The "Continuity of Coverage" provision is documented in the record. The issue of whether it provided coverage to Sokoloski should have been obvious to the parties. In the first instance, of course, the error must be attributed to Sokoloski's counsel who was certainly remiss not to raise the issue below. At the same time, however, this is not a case where an unsuspecting defendant is surprised by a last minute claim. It is simply not plausible that MetLife was unaware of Sokoloski's probable rights under the "Continuity of Coverage" provision. It was the party most familiar with its own policy, it had been given notice of a claim arising at the time of transfer from another insurance carrier, and it was certainly in a good position to determine whether premiums had been paid to it on Sokoloski's behalf. Moreover, in both its correspondences with Sokoloski denying benefits and its subsequent position during litigation, MetLife argued the very set of conditions that should have suggested Sokoloski was likely covered under the "Continuity of Coverage" clause. Yet, at no time did MetLife notify Sokoloski of this fact. This smacks of bad faith, and the fact that the issue was consequently not addressed by the District Court should not inhibit us from considering it.

Justice requires us to recognize Sokoloski's obvious claim and remand to the District Court to resolve the limited factual issues remaining to determine Sokoloski's right to benefits under it. Sokoloski has put evidence in the record showing that her pay was being deducted for "flexible benefits" such as MetLife coverage. MetLife argues that it does not conclusively show that the deductions were to pay for MetLife premiums. It should be a relatively straightforward evidentiary exercise to determine whether this was in fact the case. In the case that it is, the District Court should grant Sokoloski's claim for coverage and determine the amount and timing of benefits payable consistent with the other terms of the MetLife policy and the date of transfer.