# HELENA E. BLANCHFIELD *v.* LEWIS H. DENNIS

[No. 46, September Term, 1981.]

*Decided January 5, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Donald F. Oakley* and *Marvin Ellin,* with whom were *Jonathan Schochor* and *Ellin & Baker* on the brief, for appellant.

*Amicus curiae* brief and reply brief of Maryland Trial Lawyers' Association filed. *Robert R. Michael* and *George W. Shadoan* on the brief.

*H. Thomas Howell* and *John H. Mudd,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

We here decide that, upon request, jurors in a personal injury case must be instructed that any damages they may award are not subject to state and federal income taxes.

In this medical malpractice suit, instituted in the Circuit Court for Prince George's County, the jury determined respondent Dr. Lewis H. Dennis to be liable to petitioner Helena E. Blanchfield for misdiagnosing that she suffered from terminal bone cancer. Respondent, not contesting his liability, appealed to the Court of Special Appeals from the resulting judgment in favor of petitioner entered on the verdict in the amount of $400,000.[1] The intermediate appellate court, agreeing with the doctor's contention that the jury should have been informed of the tax exempt status of the award, vacated the judgment and remanded the case for a retrial confined to the issue of damages. *Dennis v. Blanchfield,* 48 Md. App. 325, 428 A.2d 80 (1981).[2]

Before turning to express our views concerning the legal issue here presented, we pause to relate the factual background of the case. The evidence indicates that in Jan-

---

1. The original verdict returned by the jury in favor of Mrs. Blanchfield was in the amount of $800,000.00, but the trial judge (Levin, J.) observed that in five years on the bench "this is only the second case where my conscience has been shocked by the verdict of a jury" and reduced the award, by way of remittitur, to $400,000.00, which Mrs. Blanchfield accepted.

2. The court also determined that the panel should have been instructed to reduce to present value any damages for loss of future earning capacity. See note 3 *infra.*

uary, 1976, Mrs. Blanchfield noticed a problem with her vision while poring over income tax papers. The following month, after consulting several physicians, she entered Doctor's Hospital of Prince George's County for further evaluation of her eyesight difficulty. At the hospital, the patient was examined by Dr. Dennis who administered numerous laboratory tests. Following a stay of thirteen days, Mrs. Blanchfield was discharged without comment as to her medical condition but was told to report to Dr. Dennis' office in one week. The petitioner testified that when she visited respondent's office, "he sat me down . . . [and] told me this time that I had multiple myeloma." In response to further query by his patient, the doctor explained that she suffered from a "terminal-type" bone cancer and that "[y]ou have maybe a month, maybe as long as a year to live."

Faced with what she believed to be the shocking reality of her impending death, the petitioner, a 43 year old divorcee with four children, testified that she went "downhill very fast" and was "just thinking death on my mind all the time." She terminated her marriage plans and curtailed social contacts. Mrs. Blanchfield described the concern that she felt for her 13 year old daughter and explained that her elder son and daughter-in-law moved from their house to the Blanchfield home in order to care for their mother and to supervise the young daughter. Dr. Dennis, in an effort to slow the progress of petitioner's supposed cancer, started her on a program of chemotherapy beginning after the first office consultation in March, 1976. Mrs. Blanchfield testified that the drugs caused constant nausea, vomiting, diarrhea, weight gain and dryness in the eyes, nose and mouth, all of which left her in a progressively weaker condition. This creeping physical deterioration accentuated her belief that death was near. As a result of the drug side effects, petitioner was unable to work at her job as a supervisor of school bus drivers and she retired shortly after her treatments began.

Although following a month of treatment the chemotherapy had been stopped due to the severity of its side effects, Mrs. Blanchfield continued to make weekly visits to

Dr. Dennis' office for laboratory tests. During the visit on August 3, 1976, the physician proposed that she undergo a liver biopsy to determine whether the phantom disease had spread to that organ. However, at the urging of her family, Mrs. Blanchfield, instead of undergoing the liver test, checked into the Sloan-Kettering Memorial Cancer Center in New York City for a second opinion. After being confined in this well known New York institution for 20 days of laboratory testing and examination, the petitioner was released and informed that, although she had experienced an apparent stress related vision problem, she did not have multiple myeloma, that she never had the disease, and that the chemotherapy should not have been administered. Claiming negligent diagnosis on the part of Dr. Dennis, Mrs. Blanchfield instituted this suit 10 months later.

At the conclusion of a nine day trial in January, 1980, the court instructed the jury concerning the appropriate burden of proof, the legal definition of negligence, the proper measure of damages and the like. Certain aspects of these instructions form the basis of the controversy we are now asked to consider. Among them is the contention that the trial judge erroneously declined to inform the jury, as requested by respondent, that "[a]ny damages awarded to plaintiff are not income to her within the meaning of federal and state income tax laws, and no income tax will be owed or paid thereon." [3]

---

**3.** In addition, respondent urges that because the court instructed the jury to "take into consideration any lessening of the earning capacity that [Mrs. Blanchfield] may be reasonably expected to sustain in the future," it was error not to direct the jury to reduce these damages, if any, to their present worth. In this regard, we note that in reply to respondent's request for a present value instruction, counsel for petitioner stated to the trial judge that "we haven't claimed any future loss, nor do I intend to argue [to the jury] any future loss of income. . . . And I don't intend to argue at all that this woman cannot work." Consequently, given the many types of future damage claims that can arise, and, in light of petitioner's disclaimer here, the uncertainty as to whether, and if so to what extent, such a claim will be presented at the new trial which we direct in this case, this complex issue is best left to a later date when it is more precisely framed for resolution by this Court. Moreover, we mention, without comment as to its necessity, that respondent did not proffer any evidentiary basis, expert or otherwise, to underpin his requested present value instruction.

We turn now to examine the requested tax instruction and observe, preliminarily, that it was plainly a correct statement of the current tax law. 26 U.S.C. § 104 (a) (2); Md. Code (1957, 1980 Repl. Vol.), Art. 81, § 280(a).[4] The issue thus presented in this appeal is whether the failure to give the tax instruction constitutes reversible error.[5] In support of his contention that the trial court erred in this regard, Dr. Dennis relies primarily upon the recent United States Supreme Court decision of *Norfolk & W. Ry. Co. v. Liepelt,* 444 U.S. 490, 100 S. Ct. 755, 62 L. Ed. 2d 689 (1980). In *Liepelt,* the Supreme Court, in an action tried in a state court pursuant to the Federal Employees Liability Act

Respondent also complains that the trial judge, in making reference in the instructions to actuarial tables which showed that a woman of Mrs. Blanchfield's age has a life expectancy of 31.4 years, erred by giving conclusive effect to this evidence rather than noting that such figures serve only as general guides for the jury when measuring life expectancy. In our view, the judge did not give such binding effect to the actuarial evidence. The remark was part of an instruction wherein the court informed the panel that his comments concerning the facts "will be purely advisory." See Schwier v. Gray, 277 Md. 631, 637, 357 A.2d 100, 103-04 (1976) ("when considering the adequacy of jury instructions we will consider the charge as a whole and will not select our words, phrases or sentences which might, of themselves and out of context, appear to be misleading or inartful.").

4. Section 104 (a) of the federal Internal Revenue Code provides, in pertinent part, that "gross income does not include . . . the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness. . . ." This State's income tax law, in section 280 (a), announces a doctrine of basic conformance to the federal tax scheme. See Katzenberg v. Comptroller, 263 Md. 189, 282 A.2d 465 (1971).

5. The matter of income taxes has generally concerned courts in two respects: (1) should juries be informed that damage awards are not subject to income taxes, and (2) when calculating damages for future lost wages, since a plaintiff actually enjoys only his net, after tax income, should future taxes be deducted from future wages when determining the proper amount of this award. Although a few courts have discussed these questions as though presenting one issue, see Highshew v. Kushto, 325 Ind. 505, 134 N.E.2d 555 (1956), different considerations apply to each, and, as the latter issue was not raised or briefed in this case, we express no view in this opinion concerning it. See Gulf Offshore Co. v. Mobil Oil Corp., U.S. , 101 S. Ct. 2870, 2879 n.14, 69 L.Ed.2d 784 (1981); Domeracki v. Humble Oil & Refining Co., 443 F.2d 1245, 1250-51 (3rd Cir. 1971); *cert. denied,* 404 U.S. 883 (1971); Tenore v. Nu Car Carriers, Inc., 67 N.J. 466, 341 A.2d 613, 623 (1975). In this regard, without passing on the question, we note that the Court of Special Appeals in Lumber Terminals v. Nowakowski, 36 Md. App. 82, 373 A.2d 282 (1977), held that damages for loss of future wages are to be based upon a plaintiff's gross earnings or earning capacity and that income taxes should play no part in the calculation of the award. *See also* Note, *Income Taxes and the Computation of Lost Future Earnings in Wrongful Death and Personal Injury Cases,* 29 Md. L. Rev. 177 (1969).

(FELA), held that it was error to refuse to give a tax instruction similar to that requested by Dr. Dennis in the case now before us. In concluding that juries in federally created actions must be informed that any sums awarded will not be taxed as income, the Supreme Court in *Liepelt* expressed the following view:

> "We take judicial notice of the 'tax consciousness' of the American public. Yet, we also recognize, as did the court in *Dempsey v. Thompson,* 363 Mo. 339, 251 S.W.2d 42 (1952), that few members of the general public are aware of the special statutory exception for personal injury awards contained in the Internal Revenue Code.
> '[T]here is always danger that today's tax-conscious juries may assume (mistakenly of course) that the judgment will be taxable and therefore make their verdict big enough so that plaintiff would get what they think he deserves after the imaginary tax is taken out of it.' " [444 U.S. at 497, 100 S. Ct. at 759, 62 L. Ed. 2d at 695-96 (quoting *Domeracki v. Humble Oil & Refining Co.,* 443 F.2d 1245, 1251 (3rd Cir. 1971), *cert. denied,* 404 U.S. 883 (1971), and II Harper & James, *The Law of Torts* § 25.12, at 1327-1328 (1956)).]

Whether or not the assumption of jury tax consciousness is accurate in every case, the *Liepelt* Court concluded that:

> "[t]o put the matter simply, giving the instruction can do no harm, and it can certainly help by preventing the jury from inflating the award and thus over-compensating the plaintiff on the basis of an erroneous assumption that the judgment will be taxable." [444 U.S. at 498, 100 S. Ct. at 759 (quoting *Burlington Northern, Inc. v. Boxberger,* 529 F.2d 284, 297 (9th Cir. 1975)).]

The *Liepelt* ruling was recently clarified by the Supreme Court in *Gulf Offshore Co. v. Mobil Oil Corp.,* U.S. , 101 S. Ct. 2870, 2879-80 n. 17, 69 L.Ed.2d 784 (1981), where

the Court indicated that since "[n]one of the Court's reasoning [in *Liepelt*] was directed particularly at FELA," the holding "articulated a federal common law rule" of "general applicability." Although it represents the minority view, we are in general agreement with the position expressed by the United States Supreme Court in *Liepelt,* for undoubtedly taxes are such an indelible part of most citizens' experience that it is reasonable to assume that the average juror approaches his deliberative task with taxes in mind.[6]

Those opposed to an instruction on the tax exempt nature of damage awards note that because the jury has already been fully directed as to how to calculate its verdict, further instruction is unnecessary since it must be assumed that the jury will strictly follow the law as it is explained to them. It is true that the jury in the usual negligence action is in effect directed neither to reward the plaintiff nor to punish the defendant, but rather to replace the plaintiff's losses. However, to the extent that erroneous tax considerations are allowed to creep into the deliberative process, this purpose of a damage award is frustrated:

---

**6.** The state courts which have considered this issue have resolved it in different ways. Hall v. Chicago N.W.R. Co.. 5 Ill.2d 135, 125 N.E.2d 77, 86 (1955), represents the majority view that the incidence of income tax should not be mentioned at all. See the cases compiled in 63 A.L.R.2d 1383 §§ 6(a-c) and the later case service. Other courts have adopted the position that giving the tax instruction is within the discretion of the trial court. *E.g.,* Atherley v. MacDonald, Young & Nelson, Inc., 142 Cal.App.2d 575, 298 P.2d 700, 709 (1956); Atlantic Coast Line R. Co. v. Braz, 182 So.2d 491, 495 (Fla. App. 1966); DeBose v. Trapani, 295 So.2d 72, 75 (La. App. 1974) (compare Guerra v. Young Construction Co., 165 So.2d 882, 887 (La. App. 1964); Dempsey v. Thompson, 363 Mo. 339, 251 S.W.2d 42, 45 (1952); Maus v. N.Y., Chi., & St. Louis R. Co., 165 Ohio St. 281, 135 N.E.2d 253 (1956); Geris v. Burlington Northern, Inc., 277 Or. 381, 561 P.2d 174, 183 (1977); Behringer v. State Farm Ins. Co., 6 Wis.2d 595, 95 N.W.2d 249, 254 (1959). Two states, which considered this issue before *Liepelt* was decided by the United States Supreme Court, have determined that the tax instruction must be given if requested. See Abele v. Massi, 273 A.2d 260, 261 (Del. 1970); Tenore v. Nu Car Carriers, Inc., 67 N.J. 466, 341 A.2d 613, 629 (1975) (wrongful death). Although the commentators also disagree among themselves, a substantial majority appear to favor giving an appropriately worded charge. See the compendium of law review articles in Domeracki v. Humble Oil & Refining Co., 443 F.2d 1245, 1249 n.6 (3rd Cir. 1971), *cert. denied,* 404 U.S. 883 (1971).

> Can there be any sound reason for not so instructing the jury? We can think of none.[7] Surely, the plaintiff has no right to receive an enhanced award due to a possible and, we think, probable misconception on the part of the jury that the amount allowed by it will be reduced by income taxes. Such an instruction would at once and for all purposes take the subject of income taxes out of the case. [*Dempsey v. Thompson, supra,* 251 S.W.2d at 45.]

The effect of a brief cautionary instruction as requested in this case is simply to dissuade juries from improperly inflating an award because of a misconception that the taxing arm of the government will extract a portion of the verdict. Such an instruction, in our view, will neither complicate the case, confuse the jury, nor introduce irrelevant matters at trial. The instruction is brief and easily understood. It would not require the introduction of any additional evidence. "No reference to any IRS regulation or specific statute would be necessary. No tax expert would need be summoned as a witness. No tax tables would be hauled into the courtroom. No additional computations would be required." *Domeracki v. Humble Oil Refining Co., supra,* 443 F.2d at 1251. Consequently, given the manifest benefits of informing the jury of the true tax consequences of its verdict and the lack of complication that such an instruction would engender, we hold, in accord with *Norfolk & W. Ry. Co. v. Liepelt, supra,* that in personal injury actions, the trial court must, upon request, instruct the jury as to the federal and state income tax exclusion of personal injury awards. In making this ruling, we are cognizant that *Liepelt* promulgates a new federal procedural rule and does not control our decision here. See *Croce v. Bromley Corp.,* 623 F.2d 1084, 1096-97 (5th Cir. 1980); *Barnette v. Doyle,* 622

---

7. It has been aptly noted that "plaintiff's attorneys oppose charges of this type because of a fear that the information so imparted will influence the jury to hold down the amount of their verdict." Anderson v. United Air Lines, 183 F. Supp. 97, 98 (S.D. Calif. 1950).

P.2d 1349, 1365-66 (Wyo. 1981). Nevertheless, we are convinced of the soundness of the federal decision in` this regard, and, given the overlapping jurisdiction of the two court systems, see Md. Rule 313, we perceive some advantage in there being a uniform federal-state rule. Moreover, many of the state decisions which have disapproved of the tax instruction at issue in this case were rendered in actions based on the FELA. Thus, in the wake of *Liepelt,* these decisions are of questionable validity. See *Flanigan v. Burlington Northern, Inc.,* 632 F.2d 880, 886 (8th Cir. 1980).[8] Therefore, it was error for the trial court to refuse the requested instruction and we cannot say that it was harmless in the context of this case.

> *Judgment of the Court of Special Appeals vacating the judgment of the Circuit Court for Prince George's County and remanding the case to that Court for a new trial limited to the issue of damages modified so as to direct that the new trial on damages be conducted in accord with this opinion and, as so modified, the judgment of the Court of Special Appeals affirmed.*
> *Costs to be paid by petitioner.*
> *Mandate to issue forthwith.*

---

**8.** We find four jurisdictions that have at least mentioned the *Liepelt* decision. The Massachusetts Supreme Court in Griffin v. General Motors Corp., 403 N.E.2d 402, 407-08 (Mass. 1980), held that whether to give an accurate instruction concerning the taxability of an award is left to the discretion of the trial court. On the other hand, Wyoming's highest court, relying on pre-*Liepelt* FELA cases, has determined that the trial judge is not required to give the tax instruction. Barnette v. Doyle, 622 P.2d 1349, 1365-67 (Wyo. 1981). New Jersey has cited *Liepelt* as being in accord with that state's prior decision on this point. Curtis v. Finneran, 83 N.J. 563, 417 A.2d 15, 18 (1980). Finally, North Dakota postponed to a future date consideration of whether to apply the principles of *Liepelt* in that state. South v. National R.R. Passenger Corp., 290 N.W.2d 819, 827-28 (N.D. 1980).