535 A.2d 497

**Harvey L. BAUBLITZ**

v.

**Michael Patrick HENZ et al.**

**No. 494, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Jan. 12, 1988.

Phillips P. O'Shaughnessy (Dennis C. Whelley, Sandbower, Gabler & O'Shaughnessy, P.A., Baltimore, and Joseph A. Miklasz, Glen Burnie, on the brief), for appellant.

Jeffrey R. DeCaro (Robert J. Farley and O'Malley, Miles & Harrell, on the brief), Upper Marlboro, for appellees.

Argued before WILNER, GARRITY and POLLITT, JJ.

POLLITT, Judge.

Harvey L. Baublitz, appellant and cross-appellee, was severely and permanently injured when his motor vehicle was struck in the rear by a truck, owned by 7–Up Bottling

Company and driven by Michael Patrick Henz, appellees and cross-appellants. Baublitz sued 7–Up and Henz alleging negligent operation of the truck by Henz, as the agent of 7–Up, and negligent entrustment of the truck by 7–Up to Henz "when it was unsafe to do so due to the defective condition of the vehicle." A jury in the Circuit Court for Baltimore City awarded compensatory damages of one million dollars against both 7–Up and Henz, and exemplary damages of $300,000 against 7–Up. The court (David Ross, J.) granted 7–Up's motion for judgment notwithstanding the verdict (Rule 2–532) as to the exemplary damages, but denied the motion of 7–Up and Henz for a new trial (Rule 2–533) as to the compensatory damages. Both sides appealed. The issues presented are:

 I. Whether the evidence supported the award of exemplary damages against 7–Up on the theory of negligent entrustment.

 II. Whether the trial court erred in refusing to instruct the jury that any damages for future loss of earnings must be reduced to present value.

 III. Whether the trial court erred in allowing argument to the jury as to future loss of earnings.

### Facts

There was evidence from which the jury could find that Henz was employed as a truck driver for 7–Up. On June 15, 1984, he was required as a part of his duties to drive a standard size 7–Up delivery truck from Catonsville to the Annapolis area, some 20 miles away. The truck had a gross vehicle weight of 32,000 pounds, with a cargo box some 20 feet long loaded with about 12,000 pounds of cases of bottled beverages.

The truck to be used on that day was parked in an area of the 7–Up service yard set aside for infrequently used vehicles. Henz described the truck as "old" and "not in the best of condition." It differed from a new vehicle in that "it was harder to shift gears, it was harder to steer, and the brakes were worn." The driver who had used the truck on

the previous day told Henz that the truck was "acting up" and that he should "be careful." Had Henz been given a choice, he would not have used that truck.

Henz reported this information to Tim Forrest, 7-Up's route manager, who acknowledged that the truck "didn't look like it was in the greatest shape," but said "we're only making two stops so go ahead." Forrest accompanied Henz on the trip. Twice during the trip Henz advised Forrest that the truck "was not operating properly."

As they proceeded along Generals Highway toward Annapolis, they crested a small hill. Henz saw the Baublitz vehicle stopped at a traffic light at the bottom of the grade. Henz said:

> As soon as I came over top of the hill and knew that it was a downgrade, I hit the brakes, started pumping the brakes right away. And when I saw that they weren't operable, I down-shifted one gear. I tried the brakes again. I went a little further and saw that they weren't going to work and down-shifted another gear which, you know, that's about when I looked over and said, "Hold on." I mean, by that time I could see that there was ... and said, "yeah, we're going to hit this car so hold on."

The truck collided with the Baublitz vehicle. Henz said he would have had time in which to stop the truck before the collision had the brakes been working properly.

Baublitz testified that, after the collision, he heard Henz say "that they didn't have any brakes," and "he also said that he told his supervisor a ways back or a while back that something was wrong with the brakes."

Further facts will be supplied as necessary in the discussion of the different issues.

# I

## EXEMPLARY DAMAGES

The Court of Appeals first considered the question of punitive damages in automobile tort cases in *Davis v. Gordon*, 183 Md. 129, 36 A.2d 699 (1944). Chief Judge Sloan said for the Court that gross and wanton negligence

would not suffice, but that, to entitle one to such damages, there must be shown fraud, malice, evil motive or intent. In *Conklin v. Schillinger*, 255 Md. 50, 71, 257 A.2d 187, 198 (1969), appellant asserted that punitive damages should be allowed "when an automobile driver causes injury by his intentional disregard of his duty of due care for the safety of others." The Court said the issue was not properly before the court and even if it were, and assuming, but without deciding, that appellant's interpretation of the law was correct, the facts were insufficient to justify submission of the issue to the jury. The Court did agree that the law needed further interpretation. *Conklin, supra,* 255 Md. at 76, 257 A.2d at 200–01.

That interpretation came in *Smith v. Gray Concrete Pipe Co.,* 267 Md. 149, 297 A.2d 721 (1972). In answering a question certified to it by the United States District Court for the Eastern District of Virginia,[1] the Court said:

> We regard a "wanton or reckless disregard for human life" in the operation of a motor vehicle, with the known dangers and risks attendant to such conduct, as the legal equivalent of malice. It is a standard which, although stopping just short of wilful or intentional injury, contemplates conduct which is of an extraordinary or outrageous character. Yet, it is both a functional and definitive test which, as we have noted, enjoys the virtue of having been frequently applied in this state. And if, as a test, it has been regarded as adequately stringent to serve as a basis for possible imprisonment, then, surely, there appears to be no valid reason for deeming it too liberal for imposing civil sanctions. We hold that it is the standard by which claims for exemplary damages arising out of motor vehicle operation are to be tested.

*Gray, supra,* 267 Md. at 168, 297 A.2d at 731–32.

The facts alleged in that case were that Gray, the employer, entrusted a truck to Edwards, an 18–year-old laborer

---

1. Maryland Code (1973, 1984 Repl. Vol.) § 12–601 of the Courts and Judicial Proceedings Article.

with no previous experience in driving that or similar vehicles, who possessed no chauffeur's license, and was known to be an untrained, unqualified and incompetent driver. It was further alleged that Gray knew or should have known that the truck was completely uncontrollable at speeds in excess of 50 miles per hour although being operated on an interstate highway with a speed limit of 70 m.p.h.; manifested 15 violations of I.C.C. safety regulations; was loaded illegally overwidth, with the rearview mirrors obstructed; and that the hood was being held down with two strands of baling wire. The Court said, as to the count for negligent entrustment,

> the conduct alleged here reflects a premeditated decision, deliberately arrived at, by an indifferent employer in possession of facts which should have indicated almost certain harm to others. We cannot imagine a more striking case of "wanton or reckless disregard for human life."

*Gray, supra,* 267 Md. at 172, 297 A.2d at 734.

The standard adopted in *Gray* is that which had previously been applied to criminal prosecutions for manslaughter by automobile, in most of which intoxication of the driver was an important factor. *See, e.g., Wasileski v. State,* 241 Md. 323, 216 A.2d 551 (1966); *Abe v. State,* 230 Md. 439, 187 A.2d 467 (1963); *Pierce v. State,* 227 Md. 221, 175 A.2d 743 (1961); *Lilly v. State,* 212 Md. 436, 129 A.2d 839 (1957); *Clay v. State,* 211 Md. 577, 128 A.2d 634 (1957). Appellant cites *Cohen v. Rubin,* 55 Md.App. 83, 460 A.2d 1046, *cert. denied,* 297 Md. 311 (1983), as authority for the proposition that punitive damages are recoverable against an intoxicated driver, and attempts to draw an analogy between driving while intoxicated and driving with bad brakes. His analogy is flawed in several respects. In that case the suit alleged negligence of the driver in the operation of the vehicle and negligence of the driver's father in entrustment of the vehicle, and sought punitive damages against both. As to the driver, the evidence was that he consumed beer and marijuana shortly before the accident, engaged in a race in

which he accelerated his car to 84 miles per hour on Ocean Highway in Ocean City, ignored pleas from a passenger to "slow down," and left over 200 feet of skidmarks before striking and killing a pedestrian. Evidence as to the negligent entrustment was that the father was well aware of his son's driving habits, with actual knowledge of previous citations for speeding, recklessness and leaving the scene of accidents; that, despite this knowledge, he had appeared in court with his son, representing to the court that his son was a careful driver, and pleaded for probation. Two months later the son was involved in the fatal accident, driving a car purchased for him by the father as a graduation present. The jury awarded punitive damages against the driver but did *not* award such damages against the father. One issue raised by the father on appeal was that the punitive damage claim for negligent entrustment should not have been submitted to the jury. Since no such award was made, this Court said:

> Assuming, without deciding, that the issue of punitive damages for negligent entrustment was not warranted on the facts of this case, the error, if any, was harmless.

*Cohen, supra,* 55 Md.App. at 97, 460 A.2d at 1054.

*Medina v. Meilhammer,* 62 Md.App. 239, 489 A.2d 35, *cert. denied,* 303 Md. 683, 496 A.2d 683 (1985), although not involving the negligent operation or entrustment of a motor vehicle, discusses the kind of evidence required to support an award of punitive damages in negligence actions. There it was shown that workers dug a hole three feet wide by three feet deep; watched it fill with water having a temperature of approximately 180 degrees Fahrenheit; and left the hole unguarded while going for materials with which to secure it. They were charged with knowledge that children were playing in the area who were not only attracted to the water, but had in fact played in it when it was cooler. Safety procedures were available which had been neither adopted nor implemented. A child was severely injured when he fell in the scalding water. This Court reversed a punitive damage award of $300,000, holding that the negli-

gent conduct was not so extraordinary or outrageous as to establish a foundation for punitive damages. *Medina, supra,* 62 Md.App. at 251–52, 489 A.2d at 41.

 Baublitz cites numerous pieces of evidence which he asserts demonstrate prior knowledge of Henz, as well as prior knowledge of 7–Up, as to the condition of the truck. Since the jury did not assess punitive damages against Henz it did not find "wanton or reckless disregard for human life," in the operation of the truck. Therefore, 7–Up is not liable for such damages under the theory of respondeat superior. *See Smith v. Gray Concrete Co., supra,* 267 Md. at 171, 297 A.2d at 733. Any conduct justifying such damages must be found in the alleged negligent entrustment. Any knowledge of Henz not communicated to 7–Up is not relevant.[2] The issue is what evidence, taken in the light most favorable to Baublitz, would demonstrate prior knowledge of 7–Up as to the condition of the truck, such as would make 7–Up guilty of wanton or reckless disregard for human life in sending that truck out on the highway. We agree with Judge Ross that there is none.

First, unlike the employee in *Smith v. Gray Concrete,* there is no suggestion that Henz was an untrained, unqualified and incompetent driver.[3]

Second, there was no evidence from anyone that the brakes on the truck had failed, either on previous days or on the day in question, until the collision with the Baublitz vehicle, even though Henz had been operating the truck for approximately one hour before the accident.

---

**2.** Even Henz had no previous knowledge concerning the brakes, except what he had been told by other drivers—that they were "worn." He testified, "Well, I really can't say too much about the brakes because I had never operated the truck before."

**3.** One allegation in the count charging negligent entrustment was that 7–Up knew or should have known that Henz was not a responsible driver and that 7–Up knew or should have known Henz would operate the vehicle in a negligent manner.

Third, there was no suggestion that any problems with the steering or shifting mechanisms were in any way contributing causes to the collision. Henz's testimony that he "down-shifted" twice immediately before the collision suggests no problems in doing so.

■ The only testimony of prior knowledge of defective brakes is testimony from Henz that he reported to Forrest a statement of another driver that the brakes were "worn," and the testimony of Baublitz that he heard Henz say "he told his supervisor a ways back or a while back that something was wrong with the brakes." Appellant places great emphasis on the size and weight of the truck. They are important factors in determining questions of negligence, and drivers of large, heavy vehicles owe a duty to take those elements into consideration in the operation thereof. *York Motor Express Co. v. State*, 195 Md. 525, 74 A.2d 12 (1950). The size and weight of the truck, together with the "worn" brakes, are sufficient to support a finding of ordinary negligence in the entrustment and in the operation of the vehicle. We hold, however, that they are not sufficient to show such extraordinary and outrageous conduct as to amount to a wanton or reckless disregard for human life.

## II

### REDUCTION OF FUTURE LOSS OF EARNINGS TO PRESENT VALUE

In their cross appeal, 7–Up and Henz assert the court erred in refusing to instruct the jury that any award of damages for loss of future earnings must be reduced to present value. The record is clear that Judge Ross did not refuse the instruction because he considered it to be an improper statement of the law. He refused the instruction because there was no evidence to support it.

■ A litigant is only entitled to have his jury instruction presented to the jury where his instruction is a correct exposition of the law *and* there is testimony in the case to

support it. *Levine v. Rendler,* 272 Md. 1, 13, 320 A.2d 258, 265 (1974); *Rubin v. Weissman,* 59 Md.App. 392, 406, 475 A.2d 1235, 1242 (1984).

*Dennis v. Blanchfield,* 48 Md.App. 325, 428 A.2d 80 (1981), *modified on other grounds sub. nom., Blanchfield v. Dennis,* 292 Md. 319, 438 A.2d 1330 (1982), was the first case to squarely hold that it is reversible error to refuse such an instruction in a personal injury action, not a wrongful death case.[4] Judge Thompson, for this Court, opined that, if the issue were before it, the Court of Appeals would so hold. In a footnote, this Court said, "In the absence of expert testimony, the trial court could, of course, require counsel requesting the instructions to produce appropriate tables before the matter could be judicially noticed." *Dennis v. Blanchfield, supra,* 48 Md.App. at 333, n. 5, 428 A.2d at 85. On *certiorari* on another question, in *Blanchfield v. Dennis,* 292 Md. 319, 438 A.2d 1330 (1982), the Court of Appeals found it unnecessary to decide the question. The Court noted:

> [T]his complex issue is best left to a later date when it is more precisely framed for resolution by this Court. Moreover, we mention, without comment as to its necessity, that respondent did not proffer any evidentiary basis, expert or otherwise, to underpin his requested present value instruction.

*Blanchfield v. Dennis, supra,* 292 Md. at 322, n. 3., 438 A.2d at 1332.

Although such an instruction is now generally accepted and, when supported by evidence is usually given, (See *Maryland Civil Pattern Jury Instructions,* 2d Ed., § 10.4), we are not aware that it has been specifically addressed by the Court of Appeals.

In *Burke v. United States,* 605 F.Supp. 981 (D.Md.1985), Hon. James R. Miller, Jr., District Judge, states:

---

**4.** In *Rafferty v. Weimer,* 36 Md.App. 98, 373 A.2d 64 (1977), we said it was not error to *give* the instruction on proper request.

In Maryland, the law presently is that in a personal injury action, as well as in a wrongful death action, any damages awarded for loss of future earning capacity must be reduced to present value. *Walston v. Sun Cab Co.*, 267 Md. 559, 574–75, 298 A.2d 391 (1973) (wrongful death action); *Dennis v. Blanchfield*, 48 Md.App. 325, 333, 428 A.2d 80 (1981), *modified on other grounds sub. nom., Blanchfield v. Dennis*, 292 Md. 319, 438 A.2d 1330 (1982) (personal injury action). That rule is applicable here.

*Burke, supra,* at 990.

As the trier of fact in that non-jury trial, Judge Miller directed the parties to have their respective economist experts make the appropriate calculations and advise the court thereof within two weeks.

 We believe, as we did in *Dennis v. Blanchfield, supra,* that if the issue were before it, the Court of Appeals would agree that in a personal injury action, as in a wrongful death action, damages awarded for loss of future earning capacity must be reduced to present value. We also note that even without specific recognition of the rule, the Court held evidence regarding the application thereof was properly admitted. *See, e.g., Baltimore Transit Co. v. Worth,* 188 Md. 119, 52 A.2d 249 (1947); *Baltimore & O.R.R. Co. v. Whitacre,* 124 Md. 411, 92 A. 1060 (1915). In *Hutzell v. Boyer,* 252 Md. 227, 237, 249 A.2d 449, 455 (1969), although holding that refusal to grant such an instruction, if error at all, was not prejudicial since the instruction was not customary in Maryland except in wrongful death cases, the Court also observed that "the plaintiff offered no evidence, nor proffered any formula as to how the present value may be estimated."

We also think it would have been extremely confusing to the jury to ask it to make these economic adjustments without an evidentiary basis or an explanation by experts as to how such calculations could be made. Application

of the principle of present worth (and, likewise, the principle of indexing for inflation) is beyond the understanding and capabilities of most lay persons serving on a jury. [citations omitted] Without evidence of how to adjust for present value or inflation, a jury instructed to make such calculations on its own might well present an award based on sheer speculation.

In the absence of any evidence by which future lost wages could be reduced to present value, we see no error in the district court's failure to grant a mistrial or to instruct the jury to undertake the task by utilizing its own initiative.

*Aldridge v. Baltimore & O.R.R. Co.*, 789 F.2d 1061, 1068 (4th Cir.1986), *aff'd on rehearing en banc* 814 F.2d 157 (4th Cir.1987).

We adopt the reasoning of the *Aldridge* court. We hold it is not error to refuse such instruction to the jury without some evidence as to its proper application.

## III

### CLOSING ARGUMENT

█ Finally, cross-appellants aver that the trial judge erred in allowing argument to the jury as to future loss of earning capacity.

In civil cases, closing arguments of counsel need not be recorded unless requested by the judge or a party. Rule 1224 d.2(a). It would appear that closing arguments were not recorded in this case. In any event, they were not included in the joint record extract furnished this Court. There is nothing before us for review. Rule 1028. *Brown v. Prince George's County*, 47 Md.App. 717, 424 A.2d 1111 (1981).

JUDGMENTS AFFIRMED; COSTS TO BE EQUALLY DIVIDED.