Theodora **SEBROSKI**

v.

**UNITED STATES**

No. Civ. MJG–98–1565.

United States District Court,
D. Maryland.

Nov. 5, 1999.

Deborah E. Dwyer, Columbia, MD, for plaintiff.

Lynne A. Battaglia, United States Attorney, Nadira Clarke, Assistant United States Attorney, Baltimore, MD, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GAUVEY, District Judge.

Plaintiff filed this cause of action under the Federal Tort Claims Act, 28 U.S.C.

§ 2671, *et seq.*, (1994), alleging that an employee of the federal government, Ms. Gina Davis, caused an auto accident resulting in her personal injuries.

This Court has jurisdiction under 28 U.S.C. § 1346(b) (1993), as this is a claim resulting from personal injury allegedly caused by the negligent conduct of a federal employee acting within the scope of her employment. *See U.S. v. DeCamp,* 478 F.2d 1188, 1191–92 (9th Cir.1973), *cert. denied,* 414 U.S. 924, 94 S.Ct. 232, 38 L.Ed.2d 158 (1973); *Hess v. U.S.,* 666 F.Supp. 666, 669 (D.Del.1987).

This Court must apply the law of Maryland to issues of this case because the alleged tortious conduct took place in Maryland. *See Richards v. U.S.,* 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Toole v. U.S.,* 588 F.2d 403, 406 (3rd Cir. 1978); *In re Sabin Oral Polio Vaccine Products Liability Litigation,* 774 F.Supp. 952, 953 (D.Md.1991).

The Court held a hearing on September 15 and September 21, 1999. At the hearing, testifying for the plaintiff were plaintiff, plaintiff's husband, Dr. Dexheimer, her treating chiropractor, and Dr. Helschein, an expert witness in chiropractic and physical therapy. Testifying for the defense was Gina Davis, the driver and federal employee, and Dr. Donald I. Saltzman, an orthopedist who had performed an independent medical evaluation of plaintiff.

The government does not contest its liability under the Act. Accordingly, the only question is the amount of damages to be awarded under Maryland law. Plaintiff requests damages in the following amounts: past medical expenses of $9,400.93, lost wages of $1,016.92, future medical expenses of $104,364.00, and a pain and suffering award of $135,218.15, thereby totaling $250,000.

The amount of damages are limited to the amount sought in the administrative claim, 28 U.S.C. § 2675(b) unless plaintiff can show that the exact amount of damages could not have been ascertained at the time of the filing of the administrative claim. *See Kielwien v. U.S.,* 540 F.2d 676, 681 (4th Cir.1976), *cert. denied,* 429 U.S. 979, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976); *Nichols v. U.S.,* 147 F.Supp. 6, 9 (E.D.Va. 1957). In her administrative claim filed on March 15, 1995, plaintiff stated that the amount of her claim was $100,000. *See* Exhibit C to Paper No. 10.[1]

The Court will discuss each element of requested damage in turn.

### Lost Wages

The parties agreed that Ms. Sebroski's lost wages totaled $1,016.92.

### Medical Expenses

Plaintiff submitted past medical bills in the amount of $9,400.93.

| | |
|---|---|
| Howard County General Hospital | $ 190.92 |
| Cedar Emergency | $ 173.00 |
| Primary Care Specialist | $ 325.00 |
| Dr. Michael Bershak (physical therapy) | $2,852.51 |
| Dr. Zell | $ 367.50 |
| Crossroads Imaging | $ 460.00 |
| Prescriptions | $ 164.00 |
| Dr. Peter Dexheimer (through 8/99; $90 per session: $40 manipulation; $25 ultrasound; $25 electrical stimulation) | $3,862.40 |
| Advanced Radiology (MRI) | $1,006.00 |
| | $9,400.93 |

As to the past medical expenses, the government does not challenge the necessity and reasonableness of $3,178.42, which includes the emergency treatment at Howard County General Hospital, $190.92, emergency treatment at Cedar Emergency, $173.00, the primary care specialist treatment, $325.00, the first series of physical therapy treatments (6/6/96–8/21/96), $1,498.00, Dr. Zell's treatment, $367.50, the bone scan, $460.00, and the prescriptions, $164.00. The government does challenge

1. Plaintiff argues that she could not have ascertained the exact amount of damages at the time she filed her administrative claim and therefore her recovery should not be limited

to the $100,000 sought in the administrative claim. Since the Court's award is less than $100,000, it is not necessary to reach this issue.

the necessity and reasonableness of the second series of physical therapy treatments with Mr. Bershak (1/17/97–3/31/97) in the amount of $1,354.51, the entire course of chiropractic care at Hickory Ridge Chiropractor (Dr. Dexheimer) in the amount of $3,862.00 and cost of the MRI in the amount of $1,006.00. Dr. Helschein, a licensed chiropractor and physical therapist, testified as to the necessity and reasonableness of all of Ms. Sebroski's treatment, including all the contested items above. Dr. Saltzman, an orthopedist, testified that the physical therapy treatment was overlong and all of the chiropractic care was not necessary care. He gave no opinion on the necessity or reasonableness of the MRI.[2]

 The plaintiff, of course, has the burden of proving the necessity and reasonableness of medical care and charges. It is well established that a properly qualified chiropractor is competent to testify as an expert witness. *See, e.g., Vitale v. Tisch*, 662 F.Supp. 975, 975 (S.D.N.Y.1987) (accepting a chiropractor's opinion regarding the permanence of plaintiff's present condition of pain and suffering and need for continued medical care and attention for life); *McKissick v. Frye*, 255 Kan. 566, 876 P.2d 1371, 1389–1390 (1994) (finding that a chiropractor's testimony was sufficient to establish with a reasonable certainty the need for plaintiff to receive future chiropractic care); *Iorio v. Grossie*, 663 So.2d 366, 371 (La.Ct.App.1995); *O'Dell v. Barrett*, 163 Md. 342, 163 A. 191, 192 (1932); *Vallejos v. KNC, Inc.*, 105 N.M. 613, 735 P.2d 530, 532 (1987); *Pratt v. Stein*, 298 Pa.Super. 92, 444 A.2d 674, 698 (1982). Indeed, the Court qualified him as an expert in chiropractic and physical therapy and allowed him to testify on Ms. Sebroski's injury, causation and appropriate treatment. *See Elliott v. Patterson*, 12 Md.App. 341, 278 A.2d 431, 433 (1971); *O'Dell*, 163 A. at 192 (upholding the trial court's decision to allow a state-

licensed chiropractor to provide expert testimony on the probable effect on the spinal column of a disarrangement of the pelvis, especially when the witness testified in reference to conditions he had personally examined). However, in Maryland a chiropractor is not a physician, *Beverungen v. Briele*, 25 Md.App. 233, 333 A.2d 664, 668–669 (1975), and Dr. Helschein readily admitted that he was not authorized to order an MRI. Thus, as to the MRI, the Court finds that Dr. Helschein was not qualified to testify as to the necessity of an MRI and the reasonableness of the charges, as the necessity of such a test would appear to lie beyond his area of training and expertise. Accordingly, $1,006.00 of the damages will be disallowed.

 Dr. Saltzman testified that the courses of physical therapy may have been reasonable, but were of too long a duration. Dr. Helschein disagreed testifying that both courses of physical therapy were necessary and reasonable. As to the necessity and reasonableness of the chiropractic care, the difference in the testimony of Dr. Saltzman and Dr. Helschein revolves around the purpose of the treatment. The Court is convinced that the physical therapy and chiropractic care are not curative at least after an initial relatively short period of treatment, and shortly after the injury. The Court found Dr. Saltzman's testimony and various defense exhibits, persuasive on this point. He testified that a course of physical therapy beyond 2–3 weeks would not be necessary or reasonable. Maximum medical benefit would have been achieved. Similarly, Dr. Saltzman testified that manipulation may be effective for a limited period (one month) after injury, but there is no similar support for the other chiropractic therapies of electrical stimulation and ultrasound. However, the Court is also convinced that reasonable medical expenses need not be limited to only curative treatment. The fact that care is only

2. The testimony was that Dr. Helschein suggested to plaintiff's treating physician that an

MRI might be helpful. Her treating physician in turn ordered it.

palliative cannot mean that such medical care is never recoverable. This Court can find no reasoned distinction between long term prescription of pain medications and long term prescription of chiropractic treatments.

■ Moreover, the Court can find no authority that chiropractic care is only recoverable as a medical expense if prescribed by a physician. Indeed, as will be discussed below, case law elsewhere and Maryland statutory law suggests the contrary.

The government contends in an attempt to defeat an award for future chiropractic care that "a plaintiff might argue that attending yoga classes or monthly Caribbean vacations alleviates her pain and thus should be paid for by her tortfeasor." (Paper No. 23, 14). However, chiropractic treatment is now fully established as a legitimate treatment for disease and injuries. The State of Maryland recognizes the discipline of chiropractic and licenses chiropractors to engage in the art of chiropractic. Md. Ann.Code, Health Occupations Art., § 3–301, et seq. Moreover, insurance companies are required to reimburse for chiropractic care within the chiropractor's expertise. Md.Ann.Code, Insurance Art., § 15–705; Cf. 81 Op. Att'y Gen. 24, 1996 WL 508420 (Md.A.G.1996) ("Under the Maryland Acupuncture Act of the Health Occupations Article, acupuncturists are now fully and independently licensed health care providers. Accordingly, they are entitled to reimbursement by insurance companies for any medically necessary service rendered within the lawful scope of their licensed practice. Insurers may not deny reimbursement to acupuncturists based simply on their status and may not enforce policy provisions that purport to limit reimbursement.")

The Court is satisfied that based on the testimony of Dr. Helschein that the physical therapy treatment was necessary and the charges reasonable for palliative, if not curative purposes beyond the initial 2–3 weeks of administration. As to the chiropractic care, the Court will find that such past chiropractic care was necessary and reasonable only insofar as to the modality of manipulation, as will be further discussed below. Accordingly, the Court will award $6,232.21 in past medical expenses, consisting of $3,178.42 which the government does not contest; the second series of physical therapy of $1,354.51 and past manipulation treatments of $1,699.28.

This Court has concluded that an award of past and future chiropractic care is certainly appropriate as a matter of principle. A number of courts have granted or upheld jury awards for damages based on past chiropractic treatment when the claimant establishes that such treatment was medically reasonable and necessary, or obtains it in good faith to address her injuries. See, e.g., Clements v. Morrow's Nut House, 598 So.2d 279, 279 (Fla.Dist. Ct.App.1992) (determining that an employer is liable for past and future chiropractic expenses under the state workers' compensation statute because the obligation "extends to the provision of palliative treatment which mitigated the conditions or effects of the injury."); Iorio, 663 So.2d at 371 (A tortfeasor is liable for any over treatment or unnecessary treatment provided to his victim, including chiropractic care, unless the victim included the expense in bad faith); Druilhet v. Trinity Universal Ins. Co., 361 So.2d 40, 42 (La. Ct.App.1978) (holding that because an injured victim in an automobile accident is not required to choose the best means of treatment, plaintiff is entitled to choose chiropractic treatment to alleviate pain, even though such course of action may be objectionable from the standpoint of the medical profession).

Courts have also awarded expenses for future chiropractic care. See McKissick, 876 P.2d at 1389 (chiropractor's testimony is sufficient to establish to a reasonable certainty that plaintiff would need chiropractic care one to two times a week for her remaining life expectancy of 20 years,

awarding her $30,000 in future medical expenses); *Smith v. Anderson*, 451 N.W.2d 108, 111 (N.D.1990); (appellate court affirmed jury verdict of $5,832 for future medical expenses citing treating chiropractor's testimony that based on a reasonable degree of certainty plaintiff was going to need chiropractic care on a "needs care" basis); *Pratt*, 444 A.2d at 698 (holding that future costs of chiropractic care can be awarded based on past chiropractic treatments and testimony regarding the need for future care).

Furthermore, courts have determined that palliative care is recoverable as a reasonable and necessary medical expense, including chiropractic care. *See Baggett v. Jay Garment Co.*, 826 S.W.2d 437, 439 (Tenn.1992) (holding plaintiff in workers' compensation suit was entitled to chiropractic services, where unrebutted evidence was presented that chiropractic treatment would ameliorate chronic and permanent pain, reduce the need for analgesic medication, and prolong the employee's ability to remain ambulatory); *Clements*, 598 So.2d 279, (plaintiff who underwent chiropractic treatment for purpose of alleviating her symptoms in her own initiative, but not against advice of her physician, was entitled to recover cost).

■ As to the plaintiff's claim for future medical expenses, specifically the request for future weekly chiropractic care including manipulation, electrical stimulation and ultrasound for the rest of the estimated life of Ms. Sebroski, the Court will find that the record does not establish with sufficient certainty the medical necessity of future chiropractic care of the type and frequency for which plaintiff requests payment. To recover future medical expenses, the burden is on the claimant to establish that such consequences are rea-

sonably probable or reasonably certain. *See Farley v. Allstate Ins. Co.*, 355 Md. 34, 733 A.2d 1014, 1023 (1999); *Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 464 A.2d 1020, 1026 (1983). Such probability exists when there is more evidence in favor of a claim than against it. *See Pierce*, 464 A.2d at 1026; *see also Naughton v. Bankier*, 114 Md.App. 641, 691 A.2d 712, 720 (1997).

In this particular case, Dr. Saltzman did not believe that the disk protrusion seen on MRI was the cause of plaintiff's pain nor the result of the accident. Nonetheless, he acknowledged that the plaintiff suffered from "soreness" as a residual from the motor vehicle accident in question. He did not, however, believe that the plaintiff's pain was of such a level that he would prescribe serious pain killers. On the other hand, it was Dr. Helschein's opinion that the disk protrusion shown on the MRI was caused by the car accident and that the cervical spine would get worse if continued movement was not encouraged thereby requiring regular manipulation or "maintenance" care. There is no dispute that Ms. Sebroski suffers from some residual soreness or discomfort from the accident and that the chiropractic treatment provides some palliative relief to her.

■ Dr. Dexheimer has provided Ms. Sebroski on a regular basis the chiropractic services of manipulation, electrical stimulation and ultrasound. Dr. Helschein has testified that at least the manipulation was necessary to assure that Ms. Sebroski's function was maintained, and that she was afforded palliative relief. Dr. Helschein took the clear position in his testimony in plaintiff's case-in-chief that the administration of the electrical stimulation and the ultrasound was less clearly indicated.[3]

---

**3.** While Dr. Helschien in his rebuttal testimony indicated that he believed that electrical stimulation and ultrasound as well as manipulation would be required in the future, this testimony flatly contradicted his testimony in the case-in-chief. As the Court understands

the ultrasound and electrical stimulation, it is to enhance or extend the effect of the manipulation to deeper structures in the body and the Court credits Dr. Saltzman's testimony and Dr. Helschien's original testimony that affecting the deeper structures has more limited (if

Dr. Saltzman believed that manipulation shortly after trauma can prevent scarring and provide benefit. Thereafter, he believed that chiropractic care, including manipulation would not alter the clinical course of Ms. Sebroski or other patients. The Court found Dr. Saltzman's testimony credible as to the limit of curative effects, but nonetheless determines that the award of damages for future palliative care is appropriate.[4] As to future chiropractic care, the Court finds that the plaintiff has only proven, with the requisite level of certainty, the need for future chiropractic care on a monthly basis and only for manipulation. Accordingly, the Court will award $21,408 for future medical costs. This figure represents monthly chiropractic care, that is, manipulation for the 44.6 years of Ms. Sebroski's life expectancy. Dr. Helschein testified to a reasonable degree of medical certainty that she was in need of such "maintenance" care. The Court reached the figure of $21,408 based on the testimony of Dr. Helschein that the current reasonable costs for the manipulation is $40 per session, and that he felt that such care every month was possibly sufficient.[5] Additionally, the history of Ms. Sebroski's chiropractic treatment indicates that she did go several times for four weeks or longer without any chiropractic care, that Dr. Dexheimer had urged longer and longer periods between care and that during the entire 14 months from March 13, 1997 to June 10, 1998, she received neither physical therapy nor chiropractic care. Additionally, Dr. Dexheimer's office notes, which provides information about the level and frequency of her pain, indicated relatively minor ratings of intensity and frequency of pain. The Court will not award plaintiff the amount of future medical expenses she requests for weekly, multi-modality chiropractic care, as such award in light of the above discussion is not sufficiently certain or predictable.

### Pain and Suffering

As to the pain and suffering that Ms. Sebroski suffered as a result of the accident, the Court will award $10,000. The accident was minor, with the government vehicle traveling at about 5 mph or less; although the evidence did show that even minor accidents or a collision at the slow rate of speed can result in whiplash injury and chronic pain. Indeed, Dr. Saltzman acknowledged that she suffered a residual soreness from the accident.

any) value significant periods post trauma, as was the case here.

4. While the government submitted documentary evidence and Dr. Saltzman's testimony that many doctors believe that "prolonged physiotherapy," should be discouraged as tending to reinforce pain related behavior by maintaining the patient in a passive role of sickness, it is clear that the chiropractic treatments, like pain medication, provide some relief to the plaintiff from an acknowledged residual from the accident.

5. The government argues that in the absence of evidence on present value, the Court cannot make any award of future medical expenses, citing two decisions of the Maryland Court of Special Appears, *Sun Cab Co. v. Walston*, 15 Md.App. 113, 289 A.2d 804 (1972), *aff'd*, 267 Md. 559, 298 A.2d 391 (1973) and *Dennis v. Blanchfield*, 48 Md.App. 325, 428 A.2d 80 (1981); *modified on other grounds* 292 Md. 319, 438 A.2d 1330 (1982). The Court disagrees. While these decisions do hold that in personal injury cases it is reversible error not to instruct the jury that they are to reduce to present value any damages for future losses, the Court of Appeals has declined on several occasions to adopt this requirement outside of wrongful death actions. *Walston v. Sun Cab Company, Inc.*, 267 Md. 559, 298 A.2d 391, 400 (1973) ("We confine our holding, affirming that Court, to the failure of the trial court to give an additional instruction in regard to present worth in the present death case."); *Blanchfield v. Dennis*, 292 Md. 319, 438 A.2d 1330, 1332 n. 3 (1982) (In response to respondent's argument that "it was error not to direct the injury to reduce these [future earnings], if any, to their present worth," the Court expressly declined to decide the issue). Accordingly, the law of Maryland, as expressed by its highest court, remains that "reduction of damages to present value is not customary in Maryland, except in cases of wrongful death." *Hutzell v. Boyer*, 252 Md. 227, 249 A.2d 449, 455 (1969).

The Court found Ms. Sebroski's testimony to be credible in terms of the effect that this residual condition has had on her daily living. At the same time, the Court notes that while the plaintiff missed 43.5 hours from work for physical therapy, doctors' appointments and sickness due to the back problem, that she last missed any work on April 2, 1997. She only ever missed one full day of work on June 10, 1996. Since the accident, she has continued to work full-time, has changed her job to one of a greater responsibility, and has changed the location of her job. While she has had to make some ergonomic adjustments to her work station, she has been able to not only maintain her work schedule, but apparently take on even greater responsibilities. She testified as to "discomfort" or an "ache" or "pulling" feeling in her mid-back. She complains that she has had to make some adjustments to her daily functioning in that she cannot sit for as long a period with comfort as she could previously, that she consequently cannot stay out at the theater or sporting events for the length of time she did previously, that she has to "watch her back and the way she turns her head," cannot tolerate long automobile drives due to the problem, has to sleep on her back rather than her previously accustomed position, and also frequently cannot sleep through the night but has to sleep in a different bed from her husband for fear of awakening him. Mr. Sebroski testified similarly that his wife was still able to attend spectator sports, theaters, concerts, and night clubs, but that she had a hard time tolerating any prolonged period of sitting, would be repositioning her body or "squirming" after a period of time. While they can still take drives, she is not able to sit and drive for long periods, but after 45–60 minutes, her back begins to bother her.

She has, however, clearly suffered no loss of any major life activity nor participation in customary pastimes and hobbies. She can still garden, travel, go to the theater and sporting events.

Plaintiff tried several different kinds of pain medications. They helped a little, but that she found their side effects to be intrusive, making her drowsy or unable to function clearly. She also did do certain strengthening exercises that Dr. Zell prescribed and she felt somewhat better, but discontinued them. It was not clear to the Court why she discontinued the exercises. She went to the chiropractor after Dr. Zell told her in April of 1998 that she had reached maximum medical improvement, as he suggested that she might try an alternative therapy such as chiropractic. She had had good success with chiropractic in 1992 following another accident. She feels considerable relief from the chiropractic for several days, feeling little or no discomfort, and returns as necessary. Dr. Helschein testified that such continued manipulation was essential to keep her flexible and moving.

In sum, the Court has concluded that Ms. Sebroski has had to make some adjustments to her daily activities, although minimal. Nonetheless, she is able to lead a very active and normal life. The Court will award Ms. Sebroski $10,000 for her pain and suffering.